## MOSKOWITZ v. CALLOWAY et al.
### No. 6096.

Court of Civil Appeals of Texas. Texarkana.
Feb. 11, 1944.

Rehearing Denied March 2, 1944.

Israel Smith, of Tyler, for appellant.

Troy Smith and Kelley Smith, both of Tyler, for appellees.

HARVEY, Justice.

Appellees, Mrs. Sallie G. Calloway et al., plaintiffs below, owners of a store building in Tyler, Texas, filed suit in the District Court of Smith County against Harry Moskowitz et al., appellants, asking for a money judgment for rent claimed to be due, and obtained a temporary injunction restraining defendants from removing from such building certain lighting and building fixtures, including an air-cooling system, which the plaintiffs claimed. On a trial before the court, without a jury, judgment was entered in favor of appellees for the sum of $500 for rent on account of holding possession of the leased premises by the appellant after the termination of the contract of lease, and for title and possession of certain fixtures, except some fans, lighting and trade fixtures.

Appellant Harry Moskowitz, he alone appealing, assigns as error the action of the trial court in holding that he retained possession of the building until March 10, 1943, which he contends was a month and ten days after he vacated the premises, and in rendering judgment against him for two months' rent by reason thereof. Also, that the court committed error in holding that the air-cooling units were so attached to the building as not to be removable without damage to the premises and therefore constituted a part of the realty.

The appellant was a tenant under a term lease which expired August 31, 1942; after that date he remained in possession and continued payment of the monthly rent provided by the contract. Tenant gave notice to the landlord that he intended to vacate the premises on January 3, 1943; however, he failed to do so, but remained therein under an agreement that he might stay two weeks for a half month's rent in order to pack up. After a lapse of this two weeks' period, he retained possession of the keys to the building until March 10, 1943, and left certain articles, including showcases, a stove, and other items belonging to him, which were not embraced in the injunction order. These articles were still in the building at the time of the trial of this suit.

■ We are of the opinion that the trial court's conclusion that the tenant had retained possession of the store building for the length of time for which the rent was awarded is not without support in the evidence. Articles belonging to the tenant were left in the premises for such period, and during that time the tenant retained possession of the keys to the building. The holding in Peticolas v. Thomas, 9 Tex.Civ. App. 442, 29 S.W. 166, cited by appellant, is not in conflict with the above conclusion.

The witness, L. H. Maddox, introduced by the defendant, was the only one testifying who purported to know much about the nature and type of the air-cooling units. After qualifying himself as a graduate electrical engineer with more than eight years' experience in the air-conditioning business, he stated that he had inspected the units involved herein; that they were merely boxes, containing fans, motors, and evaporative mediums, and resting on the ceiling, possibly screwed to the ceiling. Further, he testified, all the component parts could be dismantled in place and carried over the ceiling and out of the build-ing; that the units were connected to the building only by electric wires and quarter-inch copper tubing laid on the ceiling joists, and that no injury other than a nail or screw hole would result to the building by their removal.

■ With respect to determining whether or not chattels placed upon land by lessees and tenants have become permanently affixed, the rule is much more liberal at present than in times past. 19 Tex.Jur. 723. The cases of Menger v. Ward, Tex. Civ.App., 28 S.W. 821, and Sanders v. Lefkovitz, Tex.Civ.App., 292 S.W. 596, 598, are authority for the statement that "as between landlord and tenant, the greatest latitude is allowed in favor of the tenant, and that fixtures set up by the tenant for the better enjoyment of trade are retained by [him]." Judge Stokes of the Amarillo Court of Civil Appeals, in the case of Granberry v. Texas Public Service Co., 171 S.W.2d 184, 186, states:

"It is now well settled that, as between a landlord and his tenant, the term 'trade fixtures' refers to and means such articles as may be annexed to the realty by the tenant to enable him properly or efficiently to carry on the trade, profession, or enterprise contemplated by the tenancy contract or in which he is engaged while occupying the premises, and which can be removed without material or permanent injury to the freehold. * * *

"Our courts have joined those of many other jurisdictions in holding that, as between a landlord and his tenant, such appliances as those here involved may be annexed by the tenant to realty or rented buildings to enable him to carry on his trade, profession, or enterprise, and in the absence of a stipulation to the contrary, they may be removed by the tenant at the end of the term."

In the case of Harris v. Harris, Tex.Civ. App., 174 S.W. 996, the court, in considering whether a butane gas system was a part of the realty, stated that judicial knowledge might be taken of the fact that there are many different types of gas systems. This applies with equal force to air-cooling systems. It is a matter of general information that there is a great variety of cooling systems, ranging from the simple fan device, attachable to a window by the use of a few screws, to the intricate, elaborate and ponderous type of air-conditioning system de-

scribed in the case of Nine Hundred Main, Inc., v. City of Houston, Tex.Civ.App., 150 S.W.2d 468, 471. The Galveston Court of Civil Appeals held that such a system, installed at a cost of about $85,000, weighing several hundred thousand pounds, and serving five floors of a building, was so constructed as to become an integral part of the building and therefore was a part of the building. We quote the following paragraph from the case last mentioned:

"That there exists in the same and similar business relationship such a distinction between 'alterations, additions, or improvements', and 'fixtures', is recognized quite generally by the authorities, especially those in Texas. Such 'fixtures' as these parties thus appeal to have mutually had in mind are classified in Texas as 'trade fixtures', 'agricultural fixtures', and fixtures established for ornament, convenience, or domestic use, hence are removable on termination of the lease, if that can be effected without substantial injury to the freehold; but this elaborate, intricate, heavy, and complicated labyrinth, entering so integrally into and forming a part of the necessary reconstruction of this building for modern uses generally, cannot be regarded as such a concomitant of the appellee's peculiar dry-goods and department-store business as to be removable with it, like its show-cases, shelves, etc., but is rather a structural and permanent adaptation of the building itself to the new demands of business construction generally."

In this modern era of highly competitive industrial and commercial enterprises there are certain standards to which one engaged in business must conform in order to attract trade. Rest rooms are installed; running ice water is made available by the installation of fountains; air-cooling systems are provided; escalators for the convenience of the buying public are growing in use; ceiling fans are quite common. Most of these devices are in some way attached to the freehold. In order to encourage trade, when a tenant installs fixtures for the better enjoyment of his business, or for the comfort or convenience of his patrons, he should be given great latitude in removing such fixtures, even though attached to the freehold. If they can be removed without material or permanent injury to the premises, the tenant or lessee should be accorded such right of removal.

■ In the instant case, the cooling system was installed in order that the tenant might carry on better and more efficiently the business in which he was engaged, and for the purpose of adding to the comfort and convenience of his customers. Under the undisputed facts above detailed, no material or permanent injury to the freehold would result from removing the cooling units. In the circumstances, we hold that the air-cooling system is personalty, and as such, belongs to the tenant.

■■ We think the trial court was correct in holding that the dressing-rooms, wall cases, and ten fluorescent lights are permanent fixtures in the building, under his finding of fact that they are so constructed as to become part of the building and can not be removed without material damage to it. Also we approve his finding that the seven fluorescent lights in the main building, ceiling fans, time-clock, and three wall mirrors are all fixtures which can be removed without resulting damage to the premises, and that plaintiff waived any claim, as found by the trial court, to such articles by reason of the fact that Mrs. Sallie G. Calloway was present at a sale to Moskowitz of these articles by trustee in bankruptcy of the estate of a former tenant of such plaintiffs and at such time did not protest the sale.

The judgment of the trial court is reversed in so far as it awards the cooling system to appellee, and is here rendered that appellant Moskowitz recover the title and possession of same; and the judgment in all other respects is affirmed.

Reversed and rendered in part and affirmed in part.