

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

July 17, 1958

Hon. William A. Harrison
Commissioner of Insurance
International Life Building
Austin, Texas

Opinion No. WW-475

Re: Additional investments
in a home office property
exceeding 33 1/3%of a company's
admitted assets where
investment in home office
property has been contracted
for prior to the amendment
of Article 3.40 by the
54th Legislature.

Dear Sir:

You have asked this office for an opinion concerning the proper treatment
to be given an investment by a life insurance company in home office
property where additional investments are made after September 6, 1955,
where a previous investment had been contracted for by such life insurance
company prior to this date. Article 3.40 of the Texas Insurance Code
permits a life insurance company to acquire and hold one building site
and office building for a home office property. In 1954 the Legislature
amended Article 3.40 so as to limit the total investment in such property
for the first time. Acts 1955, 54th Legislature, page 916, chapter 363,
Section 13. Section 1(b) was added and reads as follows:

> "1(b). No such company shall (<u>after the effective date of this
> Act</u>) make any investment in the properties described in para-
> graph 1(a) above if, after making such investment, the total
> investment of the company in such properties is in excess
> of thirty-three and one-third (33 1/3%) percent of its admitted
> assets as of December 31st next preceding the date of such
> investment; provided, however, that such investment may be
> increased to as much as fifty (50%) percent of the company's
> admitted assets upon advance approval of the Board of Insurance
> Commissioners; provided further, that such investment may be
> further increased if the amount of such additional increase
> is paid for only from surplus funds and is not included as an
> admitted asset of the company. <u>It is especially provided,
> however, that these limitations shall not affect any bona
> fide investment in such properties actually made by contract
> or otherwise for reasonable and adequate consideration prior
> to the effective date of this Act.</u>"

Your first question is as follows:

"Assume ABC Life Insurance Company has $500,000 in admitted assets. Prior to September 6, 1955, the company contracted for the construction of a home office building not to exceed $300,000. Subsequent to September 6, 1955, and before the completion of the building, the company contracted for additional construction on the building to cost another $100,000, and this additional $100,000 was not to be paid from the surplus funds of the company. We respectfully request your opinion as to whether this additional investment after the effective date of the act violates the provisions of Article 3.40, Section 1(b), Texas Insurance Code? If you answer in the affirmative, should the Board (1) non-admit the additional $100,000 investment, (2) non-admit the entire investment in the building, or (3) require the company to dispose of the investment because it is contrary to law and is not authorized?"

You apparently assume in your question that the proviso contained in the last sentence of Section 1(b) of Article 3.40 is intended to include investment contracts entered into prior to the effective date of the act (September 6, 1955) but under the terms of which the building or improvement thereon constituting the "investment . . . in such properties" was not completed until after said date. This particular statutory language is not without ambiguity for it could be argued that the Legislature intended that only those investments which were entirely completed prior to September 6, 1955, should remain unaffected by the amendment. However, we give this sentence the same construction which you have assumed for the reason that a contrary interpretation would leave no explanation for the inclusion by the Legislature in this sentence of the requirement that the investment be by contract or otherwise for reasonable and adequate consideration. The only apparent explanation for the inclusion of these words is that the Legislature intended for the Act not to affect contracts for investments made by the company in home office property which were bona fide insofar as they were made on the basis of a reasonable and adequate consideration, without regard to whether or not the improvements comprising the investment were completed prior to September, 1955. Though you do not so state, we assume that the contract in question was supported by reasonable and adequate consideration. Therefore, since the company had contracted prior to September 6, 1955, for the construction of a home office property not to exceed $300,000.00, this investment, regardless of the extent of the company's admitted assets, would be proper insofar as Article 3.40, is concerned. Although the initial investment is proper, this article does not authorize additional investments in home office property after the effective date of the Act up to the limits specified without regard to the investments made or contracted to be made before the Act. The proper test as to whether an investment after the Act is within the limits allowed is whether the total investment in home office

property after the effective date of the Act up to the limits specified without regard to the investments made or contracted to be made before the Act. The proper test as to whether an investment after the Act is within the limits allowed is whether the total investment in home office property after the making of such additional investments exceeds the prescribed limits. Since the company in your hypothetical question has already invested more than 50% of its admitted assets and has no surplus, any further investment resulting from additional construction contracted to be made on the building would violate Section 1 (b) of Article 3.40 and would be improper.

We have previously held in our Opinion No. WW-293-A that a company investing in home office property in excess of the limits permitted by Section 1(b) of Article 3.40 should be required to either dispose of such investment or make such adjustments as will bring the investment within the permissible limits and that the investment in excess of such limits should be non-admitted for statement purposes. We believe that this rule should be applied in the fact situation given in your first question. While the application of this rule in the instant situation may seem to penalize the company by requiring it to dispose of an asset in which its orginal investment was legally made, it should be remembered that the company's own actions are responsible and this result could have been avoided if the company had been governed in its actions by the wording of the article in question. There may be some situations where the home office property is of such a nature that the company can dispose of a portion of the property and thereby reduce its investment within the appropriate limits. Under such circumstances the company would not be required to dispose of the entire investment. However, in most instances, the home office property will be of such a nature that it cannot be disposed of piecemeal and in those instances the company will be required to dispose of its entire investment. Reference is again made to our Opinion WW-293-A concerning the disposition of unauthorized investments.

We hold in answering your specific questions that the additional investment of $100,000.00 must be non-admitted and that the company must either make such adjustments and partial dispositions as will bring the investment within permissible limits or dispose of the entire investment.

Our opinion in response to your first question is limited solely to the situation where the additional investment is made as a result of an additional contract for additional construction on the building and should not be taken as expressing any opinion on a situation where the amount ultimately paid out on a contract entered into prior to September 6, 1955, exceeds the amount set out therein.

Your second question is as follows:

"Now assume XYZ Life Insurance Company has admitted assets
in the amount of $500,000. Assume further that prior to
September 6, 1955, the company contracted for the con-
struction of a $300,000 home office building. After September
6, 1955, and after the completion of the building, the com-
pany decides that it would be advisable to air-condition the
building at a cost of $100,000.00, and contracts for this
work to be done. This makes the total investment of the
company in the home office building $400,000, or 4/5 of
the total admitted assets of the company. This additional
investment is not made from the surplus funds of the
company. We request your opinion as to whether this
additional investment violates the provisions of Article
3.40, Section 1(b), Texas Insurance Code? If you answer
this question in the affirmative, should the Board (1) non-
admit the additional investment, (2) non-admit the total
investment of the company in the home office building, or
(3) require the company to dispose of the investment because
it is contrary to law and is not authorized?"

The only additional factor presented from that in your first question
concerns the nature of the investment-- that is, the additional investment
in Question No. 2 is made for the purpose of air conditioning the building
and thus its answer involves a determination of what constitutes an
"investment" as the word is used in Article 3.40. The only description
in the article of the investment is "one building site and office
building" (Section 1(a), Article 3.40). Since no further standards
are given, we must assume that the term "building site and office building"
emcompasses those improvements of, additions to, and fixtures in such an
office building as are legally classified as being a portion of the real
estate. If a particular item has become or will become a part of the
real estate is often difficult to determine.

"Whether an article is a fixture or not depends in some
degree on the facts and circumstances of the particular
case, including the relationship of the parties at issue,
. . . . Ordinarily the courts hold that for an article to
become a fixture they must unite the following requisties:
(1)  Annexation to the realty or something appurtenant
thereto, . . . (2) Adoptability or application of the
chattel affixed to the use or purpose to which the realty
is appropriated, . . . and (3) the intention of the party
making the annexation to make a permenent accession to the
freehold, . . .." 36 C. J. S. 892.

Thus, the status of a particular item of property is ordinarily a
question of fact. We note that there are cases on the one hand holding
that air conditioning equipment is not part of the real estate,
Moskowitz v. Calloway, (Civ. App.) 178 S  W. 2d 878, error ref. w. o. m.,

and on the other hand, cases holding that such equipment is a part of the real estate, Nine Hundred Main, Inc. v. Houston, (Civ. App.) 150 S. W. 2d 468, dism., judgm. cor. As stated in 43 A. L. R. 2d 1379:

> "It is not possible to state any absolute rule as to the character of an air-conditioning plant, equipment, apparatus, or the like, as a fixture, because of the many varying circumstances reflected in the cases. All that can be said . . . is that in some cases, under the particular circumstances involved, the unit has been held to be a part of the realty whereas in other cases, under the particular circumstances, the unit has been held to remain personalty."

Each case turns on the application of the rule stated above to the peculiar qualities of the equipment involved and its manner of attachment to the real estate. If the equipment after installation did not constitute part of the realty, then such additional investment as mentioned in your second question would not constitute a violation of Article 3.40, Section 1(b). If, on the other hand, it did constitute part of the real estate, the investment would be improper and our answers to Question No. 1 would apply.

Your third question is as follows:

> "Assuming a company makes an additional investment in its home office building by repair, improvement, or otherwise, after September 6, 1955, which makes the total investment in the building more than 33 1/3%, and the additional investment is not paid for from the surplus funds of the company, should the Board permit the company to retain the investment, but non-admit the excess amount over the statute, or should the Board require the company to dispose of the investment or increase the admitted assets by contribution or otherwise so that the total investment in the home office building will not exceed the statutory limit?"

Since the answer to your question would turn on the specific facts involved, we deem it inappropriate to give you a specific answer to this question. However, you should be guided by the general principles set out above. It should also be kept in mind that Article 1(b) provides that a company's investment in home office property may exceed 33 1/3% of its admitted assets up to 50% thereof it advance approval of the Board is obtained.

Hon. William A. Harrison, page 6 (WW-475)

## SUMMARY

Where a life insurance company has con-
tracted for an investment in home office
properties for a reasonable and adequate
consideration prior to September 6, 1955,
such investment is legal under Article
3.40, Section 1(b), regardless of whether
or not it represents more than 33 1/3%
of its admitted assets. Any additional
investments made in such home office
property after September 6, 1955, however,
are not legal where the total investment
exceeds the permissible limits of Section
1(b) and where the improvements represent-
ing the investment would be considered as
a part of the real estate.

Very truly yours,

WILL WILSON
Attorney General of Texas

By

Fred B. Werkenthin
Assistant

By

R. V. Loftin, Jr.
Assistant

RVL:ph

APPROVED:

OPINION COMMITTEE:

L. P. LOLLAR, CHAIRMAN

Wayland C. Rivers, Jr.
Jot Hodges, Jr.
Riley Eugene Fletcher
J. W Wheeler

REVIEWED FOR THE ATTORNEY GENERAL
BY:
    W. V. Geppert