**SPRING BRANCH BANK, Appellant,**

**v.**

**Cecil G. WRIGHT et ux., Appellees.**

**No. 14757.**

Court of Civil Appeals of Texas.

Houston.

June 9, 1966.

Rehearing Denied July 7, 1966.

Barrow, Bland, Rehmet & Singleton, Houston, Vincent W. Rehmet, Houston, of counsel, for appellant.

Joseph D. Jamail and John Gano, Houston, for appellees.

COLEMAN, Justice.

This is a suit for damages by reason of personal injuries. The trial court entered a judgment for the plaintiff based on a jury verdict, and the Bank has appealed.

Mrs. Wright and her husband own and operate a florist business and were engaged to decorate Spring Branch Bank for the Christmas season in 1962. On December 19, 1962, Mrs. Wright undertook to do this work personally. She took two small ceramic vases containing an arrangement of artificial flowers suitable for the Christmas Season and walked to a drive-in teller's booth located outside the main building. She went to the front of the booth and asked the employee in charge to admit her. At the rear of the booth there is a solid door, locked from the inside. The entire floor area of the booth is recessed nine inches below the level of the door and the sidewalk outside. This condition was unknown to Mrs. Wright. As she stood before the door, the bank employee unlocked and opened it. Mrs. Wright stepped inside, lost her balance and twisted one of her knees. The jury found that the Bank was negligent in failing to warn Mrs. Wright of the step-down, which was a proximate cause of her injuries. It acquitted Mrs. Wright of negligence in failing to determine the level of the floor inside the booth before entering, and found her damage to be the sum of $18,000.00.

Appellant contends that the difference in floor level was an open and obvious condition and not such a concealed danger as to give rise to a duty on the part of the Bank to warn an invitee.

The drive-in bank consisted of two masonry booths connected by a common roof. Ample space was provided between the booths to permit an automobile to enter. On one side of this space was the teller's window for one booth. Directly opposite this window was the door providing an entrance to the other booth. The teller's window for this booth faced the parking lot and was shaded by the overhang of the roof. Appellee entered the booth from the driveway separating the two booths. There was no sign warning her of the step-down, and no other warning was given her. A picture of the door, defendant's Exhibit #4, indicates that the sidewalk in front of it was about two inches higher than the driveway. Its threshold appears to be an inch, more or less, in height. There is noth-

ing about the outside appearance of the entrance to indicate the possibility of a change in elevation of the floor inside the door from the outside.

Appellee testified that the accident happened about noon on a day when the sun was shining brightly, and that it was not as light inside the building as outside. As she was standing at the door, the teller opened it and she stepped in. She was walking with her head up and did not look down. It can be inferred from the testimony that the flowers she was carrying interfered with her vision to some extent as she looked down. The door opened to the inside. As she opened the door, the teller said something. She turned and walked to the window as appellee stepped in and did not see the accident. It can be inferred that this activity attracted appellee's attention as she was entering the doorway. Appellee testified that she could not see the step-down from where she was standing with the flower arrangements in her hands when the door was opened.

██ Appellant owed a duty to appellee, an invitee, to use ordinary care to keep the premises in a reasonably safe condition. Renfro Drug Co. v. Lewis, 1951, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 114. It is undisputed that the door in question opened immediately upon an abrupt step-down; that there was no platform inside the door on a level with the sidewalk; that the door was solid and masked the difference in floor levels; and that the door opened to the inside. The management of the Bank knew of these conditions. While in Renfro Drug Co. v. Lewis, supra, there was expert opinion evidence that any one of these conditions created a dangerous situation and made the entrance unsafe for use, and such opinion evidence from architects was not presented in this case, we are of the opinion that the trial court properly concluded as a matter of law from these undisputed facts that the entrance was unsafe.

In a recent article (Vol. 28, No. 1, Texas Bar Journal, January 22, 1965) Associate Justice Greenhill in discussing what conditions are "open and obvious," stated:

*"When are defects open and obvious?* Open and obvious to whom? My understanding of 'open and obvious' in 'no duty' cases is expressed by the popular phrase of the comic-strip character, Li'l Abner: the defect must be one that 'any fool can plainly see.' It must be so obvious as to charge the plaintiff with knowledge of it. Examples of this are obviously slick floors (Hausman Packing Co. v. Badwey); a pane of glass by a door (Burton Co. v. Stasney); worn stairs (Houston National Bank v. Adair); or a rise in the sidewalk at a building entrance (Marshall v. San Jacinto Building, Inc.). (emphasis supplied)

"Logically, whether a defect is so plain that anyone should see it is a law question. In each of the cases mentioned above (all written or approved by the Supreme Court), the question was held to be one of law, and the cases were disposed of on instructed verdict or by some similar device."

██ Here there was a dangerous condition, of which the invitee was unaware. While it is argued that when the door was opened it could be seen, it is obvious that one standing near the door would not see the step-down unless he hesitated before entering long enough to look down and make a more careful examination of the premises than is ordinarily done. It is a matter of common knowledge that a person walking usually looks ahead and cannot see distinctly the area on the ground for several feet in front of him. When an invited guest reaches the doorway of his host's home and the door is opened for him from within, he takes this for an invitation to enter; centers his attention on his host; and ordinarily does not look down before entering. It was not an open and obvious condition. Renfro Drug Co. v. Lewis, supra; Walgreen-Texas Co. v. Shivers, 1941, 137 Tex. 493, 154 S.W.2d 625.

The cases cited by Justice Greenhill in the quotation from the Bar Journal article,

infra, may be distinguished by the fact that the step-down was concealed by the door until the door was opened to permit entry. The same fact is the principal feature distinguishing this case from various cases cited by appellant, including Marshall v. San Jacinto Building, Inc., Tex.Civ.App., 67 S.W.2d 372; A. C. Burton Co. v. Stasny, Tex.Civ.App.1949, 223 S.W.2d 310; Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374; Acme Laundry Company v. Ford, Tex.Civ.App.1955, 284 S.W.2d 745; Pogue v. Allright, Inc., Tex.Civ.App.1964, 375 S.W.2d 533. It also appears that in all of these cases the plaintiffs had actual knowledge of the conditions of which complaint was made, with the exception of the Marshall and Pogue cases. In the Marshall case the plaintiff had used the doorway many times, and in the Pogue case the plaintiff was a licensee rather than an invitee.

In Marshall v. San Jacinto Building, supra, the court quoted with apparent approval from Watkins v. Piggly Wiggly Bird Co. (C.C.A.), 31 F.2d 889, as follows:

" 'In the cases cited by plaintiff, wherein the construction was at all similar to that maintained by the defendant in this case, recoveries were permitted because the light was insufficient, or the opening into which, or the step from or over which, the plaintiff fell, *was concealed* in some way, or the attention of the person injured directed to merchandise on display, or a door opening into a basement, an elevator shaft, or other dangerous place by its location near another door, which the public was invited or the person complaining had the right to enter, became a trap for the ignorant.' " (emphasis supplied) Here the danger was concealed.

In support of his position that in this case the dangerous condition was "open and obvious," appellant cites three cases by the Supreme Court of North Carolina: Benton v. United Bank Bldg. Co., 1944, 223 N.C. 809, 28 S.E.2d 491; Little v. Wilson Oil Corporation, 1959, 249 N.C. 773, 107 S.E.2d 729; and Reese v. Piedmont, Inc., 1954, 240 N.C. 391, 82 S.E.2d 365. While in the Benton case a door opened immediately upon a step-down, the door was made of glass. In the Little case the condition complained about was a concrete slab raised about 1¾ inches above the asphalt driveway of a filling station, and in the Reese case there was a difference in the floor levels within the same room. However, the language used in the opinions leads us to the conclusion that the courts of North Carolina would hold the condition with which we are faced in this case "open and obvious." We have not found any cases where the Supreme Court of Texas has adopted the reasoning of the North Carolina courts, and we are of the opinion that these decisions are not in harmony with the decisions of the Supreme Court of Texas in the Renfro Drug Co. and Walgreen-Texas Co. cases, previously cited, and Scott, d/b/a Tidelands Motor Inn v. Liebman, Tex., 404 S.W.2d 288.

In Halepeska v. Callihan Interests, Inc., Tex.Sup.1963, 371 S.W.2d 368, the Court said:

"* * * in a suit by an invitee against the occupier, the invitee must not only prove that he was injured as a proximate result of encountering a condition on the premises involving an unreasonable risk of harm, but he must also prove, as part of the plaintiff's case, that the occupier owed him a *duty* to take reasonable precautions to warn him or protect him from such danger, * * *."

The court also said:

"If there are dangers which are not open and obvious, he is under a *duty* to take such precautions as a reasonably prudent person would take to protect his invitees therefrom or to warn them thereof. But if there are open and obvious dangers of which the invitees know, or of which they are charged with knowledge, then the occupier owes them 'no duty' to warn or to protect the invitees. This is so, the cases say, because there is 'no duty' to warn a person of things he already knows, or of dangerous condi-

tions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and appreciation thereof."

■ An abrupt step-down of nine inches behind a solid door which is closed and locked except when being used is a condition of the premises involving an unreasonable risk of harm. The condition was not so patently open and obvious that appellee must have seen it as an ordinarily prudent person under the circumstances. Whether she should have seen it, or should have known of the condition, are issues of contributory negligence. Scott, d/b/a Tidelands Motor Inn v. Liebman, supra.

■ There was no actual or charged knowledge of this condition, and no warning was given appellee. There is no contention that a warning would have been useless. The jury acquitted appellee of contributory negligence and the evidence set out in this opinion is sufficient to support this finding.

■ Appellant complains that the trial court erred in excluding testimony given by Mr. Wright at the trial of another law suit some years before that he was the "head of the concern" for the reason that it tended to impeach his testimony given at the present trial that his wife was the "back-bone of the business" and that he was "only a helper." A careful reading of the excluded testimony leads us to the conclusion that when he used the phrase "head of the concern" in the prior testimony Mr. Wright had reference to both himself and his wife. It is undisputed that both were active in the business. The exclusion of this testimony was not error.

Error is also claimed by reason of the exclusion of the pleading filed on behalf of Mrs. Wright in a previous law suit in which it was alleged that as a result of an automobile collision Mrs. Wright sustained "painful and permanent injuries to her ankle and knee." This testimony was offered to impeach the testimony of Mr. Wright who denied that Mrs. Wright had sustained an injury to her knee in the 1956 automobile collision and that they had so asserted in the law suit growing out of that collision. It is also contended that the evidence offered tended to impeach the testimony of Mrs. Wright that any injuries sustained by her prior to 1962 did not prevent her from doing her work. It is also contended that Mrs. Wright denied that after the collision in 1956 she was under medical treatment and unable to fully perform her duties as a housewife and assist in the operation of the florist business. Appellant contends that the court erred in refusing to admit sworn deposition testimony from the previous case taken in 1958 to the effect that as a result of injuring her left foot in the collision the foot was taped up "off and on for six months," that (one and one-half years after the collision) she still used a bandage on the foot at times and was still seeing a doctor and that she was only able to work an hour or two in the florist business·after the collision.

Appellant also contends that the court erred in refusing to admit proffered deposition testimony of Mrs. Wright that she had hired a maid five or six days a week following the 1956 collision to impeach her testimony denying that prior to 1962 she had hired a maid up to five or six days a week. This testimony was claimed to be material because Mrs. Wright testified as an element of damage that she had to hire a maid two days week because of the injuries sustained in the fall.

■ Prior inconsistent statements, whether contained in depositions or pleadings, are admissible in evidence to impeach a witness. The statements must be inconsistent in fact and directed to the same occasion. If the inconsistent statements are contained in pleadings, it must be shown that they were made with the knowledge, authority, or acquiescence of the party. The party to be impeached must deny having made the prior statement or testify that he

did not remember making it. In impeaching a witness by his prior statements resort may not be had to statements about immaterial and collateral matters. McCormick and Ray, Texas Law of Evidence, 2nd Ed. § 690 et seq.

 It is well settled that such prior inconsistent statements cannot be used as substantive evidence of the truth of the facts stated. McCormick and Ray, Texas Law of Evidence, 2nd Ed. § 688.

 The testimony concerning the hiring of a maid was not admissible because not inconsistent with the testimony given at the present trial since the statements relate essentially to different periods of time.

 Mr. Wright testified that Mrs. Wright received no injury to her knee in the 1956 collision, but later qualified this testimony by stating: "* * * not to my knowledge about any knee injury, but I went back and asked Mrs. Wright a minute ago if there was any knee brought up in it and she said if she had a knee injury it was just a bump." Mrs. Wright testified that her knee could have been injured in the 1956 accident, "but not to any great extent." While it does not appear definitely that the knee injured in the collision was the same knee injured by the accident of which complaint is here made, it does appear that an inconsistency exists between the allegations of the petition in the previous case and the testimony of Mr. and Mrs. Wright at this trial. The trial court erred in excluding the petition. This error did not amount to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Rule 434, Texas Rules of Civil Procedure.

 Finally appellant contends that the trial court in effect coerced the jury into returning a verdict in the case after having been advised that the jury could not agree on the answers to the special issues. Ap-

pellant's Bill of Exceptions No. 2 reflects that the procedure followed by the trial court was made known to the lawyers in advance and that no objections were made. We cannot agree that either the questions asked of the jurors individually, or the statement made to them collectively, under the circumstances reflected in the Bill of Exceptions, had a tendency to coerce them into reaching a verdict. There was no error in the procedure followed by the court. Foreman v. Texas Employers' Insurance Association, 150 Tex. 468, 241 S.W.2d 977.

The judgment of the trial court is affirmed.