**TEMPO TAMERS, INC., Don, Inc., Furrh, Inc., and Donald G. Furrh, Appellants,**

v.

**CROW–HOUSTON FOUR, LTD. and David T. Lancaster, Appellees.**

No. 05–84–00972–CV.

Court of Appeals of Texas, Dallas.

Feb. 12, 1986.

On Motion for Rehearing May 5, 1986.

Rehearing Denied June 30, 1986.

---

George C. Black, Jr., Randy Roberts, Dallas, for appellants.

J. Chris Roberts, Dallas, for appellees.

Before AKIN, GUILLOT and HOWELL, JJ.

HOWELL, Justice.

This litigation stems from a dispute between Tempo Tamers, Inc., and its landlord, Crow-Houston Four, Ltd., over Tempo's right to erect its sign in a shopping center parking lot. Tempo sued Crow for constructive eviction, misrepresentation, and wrongful sequestration. It also sued David T. Lancaster for breaching several warranties associated with the sale of the nightclub and his stock in Tempo. Crow sought to recover lost rents from Tempo and damages from Tempo, Don, Inc., Furrh, Inc., and Donald G. Furrh for removing six air conditioners from the shopping center. Also, Lancaster brought an action against Furrh, Inc., and Donald Furrh for the unpaid balance of a promissory note which he received in exchange for his stock.

The trial court refused to submit any issues concerning misrepresentation by Crow and two of the three warranties that Tempo claimed were breached by Lancaster. The trial court also entered an instructed verdict denying Tempo's wrongful sequestration claim. On the remaining issues, the jury answered in favor of Lancaster and Crow, and the trial court rendered judgment accordingly.

Donald Furrh and his corporations appeal, contending that the trial court erred in its jury charge, in entering the instructed verdict, and in allowing Crow to recover rents and attorney's fees. They also contend that the trial court erred when it admitted hearsay evidence concerning the amount of Crow's damages, allowed Crow

to introduce evidence of tax benefits to Tempo, refused to permit Tempo to introduce evidence that it obtained injunctive relief against Crow, and permitted Crow to read from Tempo's superseded pleadings. We agree that the trial court should have excluded Crow's evidence concerning the amount of damages caused by the removal of the air conditioners. Accordingly, the trial court's judgment is affirmed in part, and reversed and rendered in part.

## I. *Facts*

Lancaster opened and briefly operated a nightclub in a Houston shopping center, a location which he leased from Crow. Another tenant had erected two poles in the parking lot of the shopping center to display its sign. Although the poles were considered an appurtenance of that tenant's location in the shopping center, Lancaster asked Crow whether he could place a sign for his nightclub on these poles. Crow's agent told him to contact the tenant who "owned" the poles. While he had installed four other signs, Lancaster wanted a sign on these poles because it faced a nearby thoroughfare. Lancaster obtained the right to use the poles and erected his sign. However, he failed to obtain Crow's written approval of the sign as required under his lease. Nevertheless, Crow did not complain of the sign at that time.

Lancaster incorporated Tempo to operate the nightclub and then sold the club and his stock to Furrh, Inc. for, in part, a promissory note secured by Donald Furrh's personal guaranty. In the interim, the tenant who installed the poles closed its business and another business took possession under the previous tenant's lease. When the successor complained, Crow demanded that Tempo remove the sign on the ground that it had not obtained Crow's written approval. When Tempo refused, the illuminated sign was removed temporarily and, ultimately, the electricity was disconnected.

Claiming that it could not attract enough customers to stay in business without this lighted sign, Tempo closed its nightclub, vacated the shopping center, and sued Crow for constructive eviction. It also sued Lancaster for breaching his warranty that he owned the poles and for other misrepresentations not germane to this opinion. Discovering that Tempo removed the air conditioners which serviced its space in the shopping center, Crow obtained a writ of sequestration to recover them. Tempo claimed that, under the lease, the air conditioners were movable trade fixtures and, thus, were its property.

## II. *Rulings on the Evidence*

To prove the amount of damages caused by the removal of the air conditioners, Crow introduced the invoices for reinstalling the units and for rewiring them. The only predicate for admitting these documents was testimony from the manager of the shopping center that he recognized the documents as "bills" from the air conditioning company and the electricians. The trial court overruled Tempo's hearsay objection and admitted them for the sole purpose of showing "the amount that [Crow] paid," expressly stating that they were not to be considered as evidencing a *reasonable* cost of repair. In response to the special issue inquiring what amount of money would "reasonably compensate" Crow for the removal of the air conditioners, the jury answered "$4,702.33," the sum of both invoices. The jury also found that Crow was entitled to five-hundred dollars in exemplary damages.

Tempo does not complain of Crow's failure to prove that $4,702.33 was a reasonable cost of necessary repairs. Instead, it insists that the invoices were inadmissible hearsay evidence. Crow responds that, because the "testimony of the [l]andlord's witness as to the fact of payment was not hearsay," the invoices were admissible. Crow misstates the record. The witness never testified that he *paid* the amount demanded in the invoices. Instead, he only stated that they were "bills." The only reference to payment came from the trial court in its ruling that the invoices were admissible to show the "amount ... paid." Of course, this statement is not evidence and cannot, as Crow would have it, supply a requisite for admissibility. Thus, we can-

not agree with Crow that the invoices were not hearsay.

Under the Rules of Evidence, a statement is hearsay if it is made by someone other than the witness while testifying, if it is offered to prove the truth of the matter explicitly or impliedly asserted, and if the probative value of the statement results from the declarant's belief of the matter asserted. *See* Tex.R.Evid. 801(c), (d). The "matter asserted" in the invoices is the declarant's belief, based on the items reflected in the invoice, that the cost of repair was the amount stated in the invoice. Because the declarant never testified at trial, the invoices were hearsay and, therefore, inadmissible unless qualified as a business record or admitted under some other exception to the rule against hearsay. Tex.R. Evid. 802. Absent testimony that Crow paid this amount to repair the air conditioners or an applicable exception, the trial court erred in admitting the invoices as evidence of the cost of repair. *See Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 442 P.2d 641, 648, 69 Cal.Rptr. 561, 568 (1968); *Santangelo v. Capitol Home Planners*, 424 So.2d 1214, 1215 (La.Ct.App.1982).

Having determined that the trial court ruled erroneously, we must next determine the appropriate remedy for this error. Without asserting a "no evidence" point, Tempo argues that the jury's award is not supported by any probative evidence. The record contains no other evidence concerning the amount of damages for this ground of recovery. Thus, we must decide whether the hearsay evidence admitted over a timely objection constitutes more than a scintilla of evidence concerning the amount of damages.

In *Texas Co. v. Lee*, 138 Tex. 167, 157 S.W.2d 628, 631 (1941), the supreme court held that hearsay has no probative value. Since the promulgation of rule 802 this statement no longer controls when hearsay is admitted without objection. *Dura-Stilts Co. v. Zachry*, 697 S.W.2d 658, 661 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (hearsay entered into evidence without objection is now probative). The rule stated in *Lee* still applies, however, when hearsay is admitted over an appropriate objection. Therefore, the invoices were without probative value.

Because no probative evidence supports the jury's answer concerning the amount of Crow's damages, we reverse and render that portion of the trial court's judgment awarding actual damages to Crow for the removal of the air conditioners. *See Richardson v. Green*, 677 S.W.2d 497, 501–502 (Tex.1984). Further, even though Tempo does not present a point of error attacking the award of exemplary damages, we must delete this item of recovery as well. Crow may not recover exemplary damages when it is not entitled to recover actual damages. *Lone Star Steel Co. v. Wahl*, 636 S.W.2d 217, 222 (Tex.App.—Texarkana 1982, no writ).

With respect to Tempo's cause of action for constructive eviction, it complains that the trial court should have permitted it to introduce evidence that it obtained a temporary injunction to prevent Crow from interfering with its sign. In support of this point, Tempo directs us to the order granting Crow's motion in limine and its bill of exception. Although this bill shows what the evidence would have been, nothing in the record suggests that the matters contained in the bill were tendered into evidence.

Tempo may not predicate a point of error upon granting a motion in limine because this order is not a final ruling on the evidence. *Bifano v. Young*, 665 S.W.2d 536, 541 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). A motion in limine merely precludes reference to the subject of the motion without first obtaining a ruling on the admissibility of those matters outside the presence of the jury. *See Hartford Accident & Indemnity Co. v. McCardell*, 369 S.W.2d 331, 335 (Tex.1963). Therefore, to be entitled to complain on appeal that the trial court erroneously excluded this evidence, it was incumbent on Tempo to tender the evidence developed in the bill of exception and suffer an adverse

ruling. *Industrial Disposal Supply Co. v. Perryman Brothers Trash Service, Inc.,* 664 S.W.2d 756, 762 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). Absent an offer and an adverse ruling, Tempo's third point presents nothing for review.

■ For the same reason, we must also reject Tempo's argument that the trial court erred when it excluded evidence that Crow received increased rents for the nightclub's location after Tempo moved out. Again, Tempo failed to offer the testimony developed in the bill of exception. Therefore, this argument presents nothing for review.

Tempo next insists that the trial court erroneously admitted evidence that Furrh, Inc. obtained tax benefits because of its acquisition of Tempo. Two witnesses testified on this subject and during their testimony Crow introduced numerous documents over Tempo's objections. The broad statement of Tempo's point of error without parenthetical references to the record,[1] and Tempo's arguments under this point apparently attempt to challenge the admissibility of all of this evidence. However, rather than dismiss the point as too general, *see Fulmer v. Thompson,* 573 S.W.2d 256, 262 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.), we shall instead limit our consideration to the two instances specified in Tempo's argument under this point and supported by references to the record. In the first instance the trial court allowed Crow to introduce evidence that Tempo's net operating losses prior to its acquisition by Furrh, Inc. could be used to offset the tax liability of Furrh, Inc. The second instance concerned testimony that the market value of this offset was $57,000.

■ Tempo argues that this testimony was irrelevant and, thus, inadmissible under the version of rule 401 in effect at the time of trial. Crow responds that it introduced this testimony to show that Tempo vacated the shopping center as a result of

the tax benefits to its parent corporation rather than the loss of the sign.

Tempo alleged that Crow's interference with its sign constituted constructive eviction. Further, it sought to recover all of the costs of operating the nightclub as damages for the alleged constructive eviction. As an element of constructive eviction, it was incumbent upon Tempo to prove that Crow's interference with its sign caused it to abandon the shopping center and close the nightclub. *See Ravkind v. Jones Apothecary, Inc.,* 439 S.W.2d 470, 472 (Tex.Civ.App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.); *McNabb v. Taylor Oil Field Rental Co.,* 428 S.W.2d 714, 716 (Tex.Civ.App.—San Antonio 1968, writ ref'd n.r.e.).

The version of rule of evidence 401 in effect at the time of trial prescribed a two-part test for relevancy. *See* Tex.R. Evid. 401 (1983). First, the evidence must be "material." In other words, it must have some rational relationship with a disputed fact issue. Because it would tend to negate causation, evidence that Tempo abandoned the shopping center for reasons other than the loss of the sign is material.

Next, the challenged evidence must be "relevant." Evidence is relevant if it tends to establish the truth or falsity of a fact, which in this case is causation. Tex.R. Evid. 401(b) (1983). In light of the testimony of Donald Furrh and his accountant that Tempo's operating losses were a factor in his decision to purchase Lancaster's stock, testimony that Furrh, Inc. would enjoy an offset against future taxable income as a result of Tempo's operating losses would tend to establish that the loss of the sign did not cause Tempo to close the nightclub and vacate the shopping center. Thus, we hold that the evidence of tax benefits to Furrh, Inc. was admissible to disprove causation. Point of error five is overruled. Because we affirm the trial court's judgment in regard to the action for constructive eviction, we need not address Crow's

---

1. Tex.R.Civ.P. 414(d) requires that all points be followed by a parenthetical reference to the record to identify precisely the ruling challenged on appeal. Tempo ignored this requirement in all of its thirteen points.

"cross-point" attacking the limited purpose for which the trial court admitted this evidence.

Tempo next complains of the use of superseded pleadings to impeach Donald Furrh's testimony. In his capacity as the president of Furrh, Inc., and Tempo, Donald Furrh testified concerning the amount of damages resulting from the abandonment of the shopping center. He stated during direct examination that Tempo had previously alleged a greater amount of damages but had diminished that amount upon the advice of its attorney. On cross-examination, Crow attacked the credibility of Furrh's testimony concerning damages by questioning him about the varying amounts of damages alleged in superseded pleadings.

We cannot agree with Tempo's contention that the trial court erred when it allowed Crow to refer to these pleadings. Prior inconsistent statements contained in superseded pleadings are admissible to impeach a party's testimony. *See Spring Branch Bank v. Wright*, 404 S.W.2d 659, 664 (Tex.Civ.App.—Houston [14th Dist.] 1966, writ ref'd n.r.e.); *e.g., Highway Insurance Underwriters v. Spradlin*, 190 S.W.2d 181, 183 (Tex.Civ.App.—Eastland 1945, writ ref'd w.o.m.). Merely because the amount of Tempo's damages may not have been susceptible to a precise and verifiable quantity does not render inconsistent statements concerning these amounts inadmissible. Instead, the difficulty of quantifying unliquidated damages should only affect the probative value given to these inconsistencies by the jury while evaluating Donald Furrh's credibility. Point of error eleven is overruled.

### III. *Wrongful Sequestration*

In two points of error Tempo contends that the trial court erred in directing a verdict denying recovery for wrongful sequestration and in declaring that Crow owns the six air conditioners which Tempo removed from the shopping center. Because both points turn on whether the air conditioners were fixtures of the shopping center, we shall consider them together.

When Crow and Lancaster executed their lease, the location for the nightclub consisted only of the exterior structure. For a sixty thousand dollar construction allowance, Lancaster completed the interior construction and installed six commercial air conditioners on the roof. These units rested on redwood timbers and were secured with screws. The interior air ducts were connected to the air conditioners through an opening in the roof. When Tempo—the assignee of Lancaster's lease—vacated the shopping center, it obtained a crane and removed the air conditioners. Crow regained possession of these units under a writ of sequestration which Tempo claimed was wrongfully obtained.

If Crow had a superior right to possess the units when the writ was issued, it was not liable for wrongful sequestration. *See Brown v. Singer Sewing Machine Co.*, 352 S.W.2d 306, 307 (Tex.Civ.App.—Austin 1961, no writ); *Willis v. Mays*, 177 S.W.2d 1000, 1003 (Tex.Civ.App.—Galveston 1944, writ ref'd w.o.m.); *e.g., Darr Equipment Co. v. Holland Page Inc.*, 355 S.W.2d 595, 597 (Tex.Civ.App.—Austin 1962, writ dism'd) (where previous judgment declared that defendant owned sequestered property, plaintiff could not recover for wrongful sequestration). Apparently, the trial judge ruled that Crow had the right to possess the air conditioners because they were fixtures and, therefore, denied recovery for wrongful sequestration.

Generally, whether an improvement is a fixture depends on the intention of the party who affixes the chattel to real property. *O'Neil v. Quilter*, 111 Tex. 345, 234 S.W. 528, 529 (1921). However, when a party improves another's property pursuant to a contractual agreement, that party's intent is determined from the contract's provisions concerning the additions or improvements. *See Jim Walter Window Components v. Turnpike Distribution Center*, 642 S.W.2d 3, 4 (Tex App.—Dallas 1982, no writ); *Rogers v. Fort Worth Poultry & Egg Co.*, 185 S.W.2d 165,

167 (Tex.Civ.App.—Fort Worth 1945, no writ); *Morris v. Biggs & Co.,* 165 S.W.2d 915, 918 (Tex.Civ.App.—Amarillo 1942, writ dism'd).

■ The lease between Crow and Lancaster provided that "[a]ll alterations, additions, improvements and fixtures (other than *unattached,* moveable trade fixtures) which may be installed by either party shall remain upon and be surrendered with and become the property of [Crow] at the termination of this lease." [Emphasis added]. As Lancaster's assignee, Tempo was obligated by this provision to the same degree as was Lancaster. *See Smith v. Roberts,* 218 S.W. 27, 29 (Tex.Civ.App.—Amarillo 1920, no writ); *Sansing v. Risinger,* 2 Willson 626, 627 (Tex.Cr.App.1885).

Tempo argues that the term "moveable trade fixture" is self-contradictory when modified by the word "unattached" because fixtures are attached by definition and because "trade fixtures" merely denotes a subset of fixtures. As the court stated in *Granberry v. Texas Public Service Co.,* 171 S.W.2d 184, 186 (Tex.Civ.App —Amarillo 1943, no writ):

"Trade fixture[ ]" refers to and means such articles as may be annexed to the realty by the tenant to enable him to properly or efficiently ... carry on the trade profession, or enterprise contemplated by the tenancy contract or in which he is engaged while he is occupying the premises and which can be removed without material or permanent injury to the freehold.

Thus, if the parties ascribed this meaning to the term "trade fixture", then there could have been nothing that was an *unattached* trade fixture, and "[a]ll additions, improvements and fixtures" would belong to Crow. Tempo contends, therefore, that we should omit the word "unattached" and

enlarge the exception to include all "trade fixtures".

We are not at liberty to ignore the "unattached" requirement or employ the foregoing definition of "trade fixtures" because we may not construe a contract to render its terms meaningless. *Blaylock v. American Guarantee Bank Liability Insurance Co.,* 632 S.W.2d 719, 722 (Tex. 1982). Neither party has contended that the lease is ambiguous. Thus, the meaning of this provision is a question of law to be decided based on the plain, ordinary meaning of the words used in the contract. *Tower Contracting Co. v. Flores,* 157 Tex. 297, 302 S.W.2d 396, 398–99 (1957).

Our primary concern here is to both give meaning to all of the lease's provisions while ascertaining the true intentions of the parties as expressed in the lease. *See Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). Given that "unattached, moveable trade fixtures" must have some meaning, and that the parties could not have intended that "trade fixtures" have the meaning ascribed to it by the courts, we look to the plain, ordinary understanding of what a trade fixture is. An alternate definition of "fixture" is "an accessory or article that serves a special purpose." *Webster's Third New International Dictionary* 861. When coupled with the modifier, "trade," "trade fixtures" would include all accessories or articles that serve to further Tempo's trade, not just those that are attached to the premises. Therefore, the term "unattached, moveable trade fixtures" includes all accessories or articles that serve the nightclub business which are both unattached to the leased premises and are moveable. This would not, of course, include the air conditioning units.

Moreover, with respect to the air conditioning units, we are reassured in this decision by the following excerpt from Lancaster's agreement to complete the interior:

| | Responsibility | |
|---|---|---|
| | Landlord | Tenant |
| 1) Heating, Ventilation and air conditioning: | | |
| a) ___ ton, gas/electric HVAC unit. | | X |
| b) High voltage electrical connection as specified by Landlord's engineer. | | X |
| c) HVAC in retail area and bath (<u>HVAC to be left in demised premises as a permanent fixture</u>). | | X |

[Emphasis added]. *See Hatcher v. Weatherall,* 551 S.W.2d 179, 182 (Tex.Civ. App.—Texarkana 1977, no writ) (specific provision prevails over general). Tempo argues, however, that the parenthetical in subdivision "c" refers only to heating, ventilation, and air conditioning located in the retail and bath areas, and not the air conditioning units because they were located on the roof. We disagree. Subdivision "c" means that it is the tenant's responsibility to provide heating, ventilation, and air conditioning in the designated areas, while the parenthetical means that heating, ventilation and air conditioning—regardless of location—are permanent fixtures. This reading is consistent with that portion of the lease which states that the roof was for the exclusive use of the landlord. For the foregoing reasons, we hold that, under the terms of this lease, Lancaster intended that the air conditioners become a fixture as part of the consideration for the sixty-thousand dollar allowance he received from Crow.

Because we must determine the intent of the parties solely from the lease agreement, we may not examine the circumstantial evidence of intent based on the nature of the property annexed and the degree to which it was affixed to the realty. Nor must we address *White v. Cadwallader & Co.,* 299 S.W.2d 189 (Tex.Civ.App.—San Antonio 1957, writ ref'd n.r.e.) and *Moskowitz v. Calloway,* 178 S.W.2d 878 (Tex. Civ.App.—Texarkana 1944, writ ref'd

w.o.m.) cited to us by Tempo as authority for the proposition that air conditioners are trade fixtures. We only note that those cases are inapplicable here because the parties in this case could not have reasonably intended that "trade fixtures" have the legal meaning ascribed to it by the courts in *White* and *Moskowitz.* For the foregoing reasons, we overrule Tempo's eighth and ninth points.

IV. *Special Issues*

In a single request, Tempo sought the submission of twenty special issues. Although the court's charge included the substance of many of these issues, the trial court refused to submit any of Tempo's requested special issues concerning recovery from Crow for misrepresentation and Tempo's action against Lancaster for breaching the warranties that the nightclub's tax returns were prepared according to standard accounting practices and that he had title to all of the stock in Tempo. In two points of error, Tempo insists that the trial court erred when it refused to submit any issues addressing these grounds of recovery. These contentions are untenable because Tempo did not separately request each issue or cluster of issues.

Under the Rules of Civil Procedure, the "[f]ailure to submit an issue shall not be deemed a ground for reversal ..., unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment. ..." Tex.R.Civ.P. 279. In order to preserve the record for appeal, each issue or cluster of issues must be the subject of a separate request. *Walton v. West Texas Utilities Co.,* 161 S.W.2d 518, 519 (Tex.Civ.App.—Eastland 1942, writ ref'd w.o.m.). The trial court is not required to search through a lengthy request to ferret a proper issue or group of issues for submission. *See Edwards v. Gifford,* 137 Tex. 559, 155 S.W.2d 786, 788 (1941); *e.g., Hoover v. Barker,* 507 S.W.2d 299, 305 (Tex.Civ.App.—Austin 1974, writ ref'd n.r.e.) (single request containing 54 issues); *Griffey v. Travelers Insurance Co.,* 452 S.W.2d 725, 726 (Tex.Civ.App.—Amarillo

1970, writ ref'd n.r.e.) (single request containing 18 issues). Therefore, if any of the issues in an en masse request is improper, the trial court may properly refuse to submit *all* of the issues contained in the request. *Swinney v. Winters*, 532 S.W.2d 396, 404 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.); *Metal Structures Corp. v. Plains Textile, Inc.*, 470 S.W.2d 93, 101 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.).

██ The trial court may properly refuse to submit various phases or different shades of the same issue. Tex.R.Civ.P. 279. Because the substance of many of the issues requested by Tempo was already submitted in the court's charge, the trial court could have properly have refused to submit those requests. Consequently, Tempo cannot complain of the refusal to submit any of the issues contained in its request. *See American Pozzolan Corp. v. Desert Trucking Co.*, 450 S.W.2d 433, 435 (Tex.Civ.App.—San Antonio 1970, writ ref'd n.r.e.). Points of error one and thirteen are overruled.

Tempo also contends that the trial court incorrectly defined the phrase "permanently deprive" as employed in the special issue on constructive eviction. The trial court instructed the jury that " 'permanently deprive' means that the acts of [the landlord] regarding the sign in question continued long enough and were pervasive enough to constitute a permanent denial of [the tenant's] use and enjoyment of the [l]eased [p]remises."

██ Tempo argues that this definition was improper because it required the jury to find that Crow committed more than one act, that the acts must have occurred over an extended period of time, and that they had to be "pervasive." During trial, however, Tempo entered only the following objection:

> ... [W]e would object to the submission of the last paragraph in [s]pecial [i]ssue [n]umber [t]en in that ... such paragraph and definition ... does not appear to be the law in the State of Texas.... We feel like that particular definition

limits the very province of the [j]ury in determining what is permanent deprivation.... [T]hat is an ultimate fact issue which is the sole province of the [j]ury to determine. The issue has the effect of limiting the inquiry of the [j]ury and limiting the bounds by which they may determine permanent deprivation.

Rule 274 provides that "[a]ny complaint as to an instruction, issue, definition, or explanatory instruction ... shall be deemed waived unless specifically included in the objections" at trial which point out distinctly the matter objected to and the grounds for the objection. *Davis v. Campbell*, 572 S.W.2d 660, 663 (Tex.1978); Tex.R.Civ.P. 274. If, as in the present case, "the [alleged] fault lies in the use ... of a particular word or phrase, the specific word or phrase must be identified" by the objection. G. Hodges, *Special Issue Submission in Texas* 155 (1959). Given a liberal construction, Tempo's objection to the charge may have sufficiently specified the *grounds* of its objection. However, it did not distinctly identify for the trial court which portions of this definition Tempo was challenging. Consequently, the error, if any, in the trial court's definition of "permanently deprive" was waived by Tempo's failure to specify the matter objected to. Tex.R.Civ.P. 274; *see, e.g., State Farm County Mutual Insurance Co. v. Plunk*, 491 S.W.2d 728, 732 (Tex Civ.App.—Dallas 1973, no writ) (objection that definition was too narrow and allowed jury speculation held too general to sufficiently inform the trial court of the basis of the objection).

Tempo next complains that the trial court erred in allowing Crow to recover rents that accrued after it vacated the shopping center. This point is too general to direct our attention to a particular error as required by Rule of Civil Procedure 414(d). *Bufkin v. Texas Farm Mutual Insurance Co.*, 658 S.W.2d 317, 321 (Tex.Civ.App.— Tyler 1983, no writ). Thus, we look to the argument under this point to ascertain the ruling of which Tempo complains. Tempo first argues that Crow was not entitled to recover rents because the evidence conclu-

sively established that Crow terminated its lease with Tempo and, therefore, that Tempo was relieved of any future obligation under the lease. In support of this contention, Tempo relies on the testimony of the shopping center manager identifying a letter as one "explaining that we have terminated the lease and revoked [Tempo's] right of possession...." Tempo contends that this testimony was conclusive on the fact of termination. We cannot agree.

■■■■ An admission is not conclusive of an issue unless it is a *judicial* admission, which relieves the adversary of proving the fact admitted and precludes the admitting party from disputing it. *Gevinson v. Manhattan Construction Co. of Oklahoma*, 449 S.W.2d 458, 466 (Tex.1969). The witness, Randy Hancock, managed the shopping center when Tempo moved out. However, Hancock testified at trial that he had "left the Crow Company and started [his] own real estate development firm...." Because this witness was neither Crow's agent nor its representative at the time he testified, his statement cannot be a judicial admission because it was not made by a *party*. *See Mobil Oil Co. v. Dodd*, 515 S.W.2d 351, 353 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.) (judicial admission is a formal statement by a party or his attorney). Further, we construe Hancock's testimony to be an opinion concerning the legal effect of the letter. Therefore, it cannot be a judicial admission also because it is not a statement of *fact*. *See Hedge v. Bryan*, 425 S.W.2d 866, 868 (Tex.Civ.App.—Tyler 1968, writ ref'd n.r.e.). Absent a judicial admission, Tempo did not conclusively establish termination unless all the evidence showed that Crow terminated the lease.

The letter identified by Hancock was written by him after Tempo moved out. It was admitted without objection and states:

In accordance with [a]rticle 19 of your [l]ease, Crow-Houston Four Limited hereby terminates and revokes your right of possession to your [d]emised [p]remises. My office will seek a replacement for you in your [d]emised [pr]emises. After an acceptable replacement has been procured and a date established whereby the replacement tenant will commence payment of all obligations in your place, your [l]ease will be terminated. My intention here is for you to remain liable for all payment obligations until another tenant relieves you of the same. You will be notified of our progress in this endeavor.

Until such date, you are encouraged to pay all rentals, maintenance and late charges which are owed by you to Crow-Houston Four Limited in order to avoid additional litigation concerning the same.

In light of these statements and the fact that Hancock's testimony was not a judicial admission by Crow, we cannot agree that Tempo established as a matter of law that Crow terminated the lease. At best, the evidence raised a question for the trier of fact to decide.

■■■■ However, Tempo did not plead termination as an avoidance to liability on the lease as required under the Rules of Civil Procedure. Tex.R.Civ.P. 94; *cf. Crawford v. Haywood*, 392 S.W.2d 387, 388–89 (Tex. Civ.App.—Corpus Christi 1965, no writ) (tenant relying on surrender as defense to action for rents by landlord must plead and prove it). Neither did Tempo offer a trial amendment alleging termination or request the submission of a special issue inquiring whether Crow terminated the lease. Because it had the burden of proving termination, Tempo waived the termination defense by failing to request its submission. Tex.R.Civ.P. 279. Therefore, the trial court did not err in awarding Crow recovery of rents under the lease.

Tempo next insists that the trial court erred in awarding attorney's fees to Crow because Crow failed to separate the work for which attorney's fees may be recovered from that for which they may not. We interpret this point to complain of the special issue on attorney's fees. *See, e.g., Success Motivation Institute v. Lawlis*, 503 S.W.2d 864, 866 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.). The trial court rendered its judgment according

to the jury's answer that $46,217 would "fairly and reasonably compensate" Crow for its attorney's services through trial. Tempo did not object to the submission of this issue.

For the purposes of the rules concerning the submission of special issues, attorney's fees are considered as a ground of recovery. *See Hamby Co. v. Palmer*, 631 S.W.2d 589, 591 (Tex.App.— Amarillo 1982, no writ). When the trial court submits an improper measure of damages for a ground of recovery, the adverse party may not complain on appeal unless he objects to the submission of the damage issue on that basis. *Whitson Co. v. Bluff Creek Oil Co.*, 156 Tex. 139, 293 S.W.2d 488, 493 (1956). Although we find no case so holding, this rule applies with equal force in regard to recovery for attorney's fees. Because it failed to object to this issue at trial, Tempo cannot now complain of the attorney's fee award. Tex.R. Civ.P. 274.

In the two remaining points, Tempo contends the evidence was legally insufficient to support the submission of an issue inquiring whether the anchor tenant had the right to object to its sign and another concerning the liability of Don, Inc., Furrh, Inc., and Donald G. Furrh for payments under the lease. These points present nothing for review because Tempo cites no authority in support of its arguments under these points. Points of error questioning the legal sufficiency of the evidence which are not supported by both argument and citations of authority are waived. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex.1983).

That portion of the trial court's judgment allowing Crow to recover actual and exemplary damages for the removal of the air conditioners is reversed and rendered. In all other respects, the judgment is affirmed.

## ON MOTION FOR REHEARING

Appellants complain that we failed to address a contention raised in their first point of error, which stated that the "trial court erred in dismissing the cause of action against appellee Crow for misrepresentation of fact and failing to submit issues to the jury with regard to such action." We found no ruling in the record indicating that the trial court dismissed appellants' action for fraud, and therefore interpreted the point as complaining of the failure to submit special issues on that ground of recovery. Appellants insist on rehearing that this point complained of the dismissal of their fraud action.

Assuming that the trial court so ruled, it would not have erred in dismissing the fraud cause of action. As a matter of law, Crow owed appellants no affirmative duty to disclose its intention to insist upon the lease provision requiring Tempo to obtain its written approval before erecting its sign. A failure to disclose information is not fraudulent unless one has an affirmative duty to disclose, such as where a confidential or fiduciary relationship exists between the parties, *Richman Trusts v. Kutner*, 504 S.W.2d 539, 543–44 (Tex. Civ.App.—Dallas 1973, writ ref'd n.r.e.), or where a party later learns that previous affirmative representations are in fact false. *Susanoil Co. v. Continental Oil Co.*, 519 S.W.2d 230, 236 (Tex.Civ.App.— San Antonio 1975, writ ref'd n.r.e.). Appellants, through their attorney, admitted in the hearing on Crow's special exceptions that Crow never made any representation regarding whether it would object to Tempo's use of the sign. Further, the mere contractual relationship between a lessor and lessee does not impose upon the lessor an affirmative duty to disclose. In *American Marine Upholstery v. Minsky*, 433 S.W.2d 717, 719–20 (Tex.Civ.App.—Eastland 1968, writ ref'd n.r.e.), the court held that there was no liability for fraud when the lessor does not disclose information concerning the property. Therefore, we hold that Crow was not liable to appellants for fraud as a matter of law. We expressly do not reach questions of waiver and estoppel as they have not been presented for appellate review. The motion for rehearing is overrruled.