**SW LOAN A, L.P., Appellant**

v.

**Anibal J. DUARTE–VIERA, Antonio P. Pardo and Edward M. Reiss, Appellees**

**No. 04–15–00255–CV**

Court of Appeals of Texas, San Antonio.

Delivered and Filed: February 17, 2016

Bryan Bond, John Gerhart Jr., Hunton & Williams LLP, Dallas, TX, for Appellant.

Robert Arthur McNiel, Kathleen Kilanowski, Brian Patrick Lauten, Deans & Lyons, LLP, Dallas, TX, for Appellees.

Sitting: Karen Angelini, Justice, Marialyn Barnard, Justice, Luz Elena D. Chapa, Justice

## OPINION

Opinion by: Karen Angelini, Justice

SW Loan A, L.P. appeals from a take-nothing judgment in its suit against Aníbal J. Duarte–Viera, Antonio P. Pardo and Edward M. Reiss for breach of guaranty agreements. SW Loan presents two issues on appeal. First, it argues the evidence is legally and factually insufficient to support the jury's finding that the borrower, 1946 Property LLC, did not fail to comply with the promissory note. Second, it argues the trial court abused its discretion in awarding attorney fees to Duarte–Viera, Pardo, and Reiss. We reverse and remand in part, and reverse and render in part.

### BACKGROUND

In April 2008, 1946 Property LLC borrowed ten million dollars ($10,000,000.00) from Stillwater National Bank and Trust Company. The purpose of the loan was to refinance an existing debt on an apartment project in San Antonio, Texas. 1946 Property signed a series of documents in connection with the loan, including a loan agreement, a promissory note, and a deed of trust. Additionally, Duarte–Viera, Pardo, and Reiss each signed a limited guaranty agreement personally guaranteeing the loan's repayment. Each guaranty was limited to two and a half million dollars ($2,500,000.00).

In May 2011, 1946 Property and Stillwater National Bank agreed to amend the loan agreement. Among other things, the amendment required 1946 Property to deposit $20,000.00 per month into an escrow account beginning on June 5, 2011, and on the fifth day of each month thereafter, apparently for the purpose of paying taxes.

In December 2011, Stillwater National Bank transferred to SW Loan all "right, title and interest in and to" the loan agreement, the promissory note, the deed of trust, and the guaranty agreements.

In 2012, SW Loan's representatives sent 1946 Property two notices of default. The first notice of default, dated June 5, 2012, stated that 1946 Property had defaulted on the terms of its loan because it had not made its monthly tax escrow payments and, because of the escrow shortage, $262,322.35 in taxes had not been paid to the tax authority. The first notice of default gave 1946 Property thirty days to cure the escrow and tax related defaults.

The second notice of default, dated July 3, 2012, stated that 1946 Property had defaulted on the terms of its loan because it had failed to make seven of its required $20,000.00 tax escrow payments, and it had failed to make two principal and interest payments of $60,508.72 each for a total of $121,017.44. The principal and interest payments were due on May 17, 2012, and June 7, 2012. Additionally, the second notice informed 1946 Property that SW loan was accelerating the amount due on the promissory note and was demanding that 1946 Property pay the balance due under the note, $10,363,669.79 by July 10, 2012.

When 1946 Property failed to comply with the demand made in the second notice of default, a foreclosure sale was scheduled for August 7, 2012. However, on the day of the foreclosure sale, 1946 Property filed for bankruptcy, causing the foreclosure sale to be postponed. Two months later, on October 19, 2012, 1946 Property agreed to an order modifying the automatic bank-

ruptcy stay, which allowed SW Loan to sell 1946 Property's real property at foreclosure. The foreclosure sale occurred on November 6, 2012.

SW Loan sued Duarte–Viera, Pardo, and Reiss for breach of the guaranty agreements.[1] In its petition, SW Loan alleged that 1946 Property had failed to perform its financial obligations under the loan agreement and promissory note. Duarte–Viera, Pardo, and Reiss answered the suit, generally denying the allegations in S.W. Loan's petition and asserting defenses and counterclaims.

The case went to trial before a jury. SW Loan presented two witnesses to testify about the merits of its claims. The first witness was an asset manager from the company that serviced the loan for SW Loan. The second witness was one of the defendants. Additionally, numerous documents were admitted into evidence, including the loan agreement, the deed of trust, and the guaranty agreements.

The jury found that SW Loan was the holder/owner of the limited guaranty agreements executed by Duarte–Viera, Pardo, and Reiss. However, in response to a question asking if 1946 Property had failed to comply with the promissory note, the jury answered, "No." The jury did not reach the remaining questions on SW Loan's claims, including questions about whether each of the defendants had complied with the terms of the guaranty agreements and the amount of damages. The jury did answer questions about the reasonable and necessary attorney fees for the defendants' attorneys. The jury found that $7825.00 was a reasonable fee for the necessary services of the defendants' attorneys in the trial court; that $7500.00 was a reasonable fee for representation in

an appeal to the court of appeals; and $10,000.00 was a reasonable fee for representation in the Texas Supreme Court.

SW Loan moved to disregard the jury's findings, but the trial court denied the motion. The trial court rendered judgment that SW Loan take nothing on its claims for breach of the guaranty agreements. Additionally, the trial court rendered judgment in favor of Duarte–Viera, Pardo, and Reiss on one of its declaratory judgment counterclaims, concluding that the limited guaranty agreements in this case "guaranteed principal and interest only up to $2,500,000.00; no other amounts such as taxes, environmental and/or appraisal costs, were guaranteed by the Defendants."

Consistent with the jury's findings, the trial court awarded Duarte–Viera, Pardo, and Reiss attorney fees in the amount of $7,825.00 for representation at the trial court level, $7,500.00 for representation through appeal to the court of appeals; and $10,000,000 for representation in the Texas Supreme Court. SW Loan appealed.

### SUFFICIENCY OF THE EVIDENCE

■ In its first issue, SW Loan argues the evidence was legally and factually insufficient to support the jury's finding against it concerning 1946 Property's failure to comply with the promissory note. SW Loan argues the trial evidence conclusively established that 1946 Property defaulted on the promissory note and failed to repay its loan from Stillwater National Bank.

### Breach of the Guaranty Agreements

■ A guaranty is a promise to a creditor by a third party to pay a debt on

---

1. The suit was filed on August 6, 2012, the day before 1946 Property filed for bankrupt-    cy.

behalf of another in the event the primary obligor fails to perform. *Republic Nat'l Bank of Dallas v. Nw. Nat'l Bank of Fort Worth,* 578 S.W.2d 109, 114 (Tex.1978). To recover under a guaranty contract, a party must show (1) the existence and ownership of the guaranty contract, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the guarantor's failure or refusal to perform on the promise. *Lee v. Martin Marietta Materials Sw., Ltd.,* 141 S.W.3d 719, 720–21 (Tex.App.–San Antonio 2004, no pet.).

Here, as the plaintiff, SW Loan had the burden to establish each and every element of its claims. *See id.* The issue presented in this appeal focuses on the third element of SW Loans claims, the occurrence of the conditions upon which the guarantors' liability was based.

The guaranty agreements signed by Duarte–Viera, Pardo, and Reiss stated that each guarantor:

> guarantees to the Lender the absolute, complete and punctual payment and performance when due of all principal indebtedness and other monetary obligations evidenced by or owing under the Note, the Agreement, the Loan Documents, and all other documents executed in connection therewith and all renewals, consolidations, modifications, amendments, increases and extensions thereof, together with all interest thereon and all expenses of collection thereof including attorneys' fees and expenses (all of the foregoing items are referred to herein as the "Indebtedness"), provided that the Guarantor's foregoing guarantee of payment and performance obligation owing hereunder is limited to $2,500,000.00 of principal plus all interest attributable thereto[.]

Additionally, each of the guaranty agreements provided:

> [t]he Lender may, at the Lender's option, proceed to enforce this Limited Guaranty agreement directly against the Guarantor immediately after the occurrence of a Default under the [Loan] Agreement (which term "Default" will have the same meaning herein as such term is defined in the [Loan] Agreement) with respect to the obligations set forth at Section 2 hereof without first proceeding against Borrower or any other guarantor or any other person liable for payment of the Indebtedness, and without first proceeding .against or exhausting any collateral now or hereafter held by the Lender to secure payment of the Indebtedness.

Thus, the guarantors' liability was conditioned on the occurrence of a default under the loan agreement.

**Standard of Review**

When a party attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex. 2001). In performing a legal sufficiency review, we must first examine the record for evidence that a reasonable factfinder would credit as supporting the finding while ignoring all evidence to the contrary unless a reasonable factfinder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005); *Dow Chem.,* 46 S.W.3d at 241. If there is no evidence to support the finding, we then examine the entire record to determine if the contrary proposition is established as a matter of law. *Dow Chem.,* 46 S.W.3d at 241. "The point of error should be sustained only if the contrary proposition is conclusively established." *Id.* "Evidence is conclusive only if reasonable people could not differ in their

conclusions, a matter that depends on the facts of each case." *City of Keller*, 168 S.W.3d at 816.

We consider the evidence in the light most favorable to the finding under review and indulge every reasonable inference that would support it. *City of Keller*, 168 S.W.3d at 822. We assume that jurors decided questions of credibility or conflicting evidence in favor of the finding if they reasonably could do so. *Id.* at 819. We do not substitute our judgment for that of the factfinder if the evidence falls within this zone of reasonable disagreement. *Id.* at 822. However, while "[p]roper legal-sufficiency review prevents reviewing courts from substituting their opinions on credibility for those of the jurors," "proper review also prevents jurors from substituting their opinions for undisputed truth." *Id.* 816–17. "When evidence contrary to a verdict is conclusive, it cannot be disregarded." *Id.* at 817.

### The Trial Evidence

The evidence presented on the merits of SW Loans claims consisted of testimony from two live witnesses and numerous documents.

### *The Witnesses' Testimony*

The first witness, Gary Redman, testified that he was employed as an asset manager for Situs Asset Management, where his duties consisted of monitoring a number of commercial loans. Redman explained that his job was to ensure that the covenants of the loan documents were being followed by the borrower. Redman identified the loan agreement between 1946 Property and Stillwater National Bank, and said it was made with regard to a ten million dollar promissory note that was signed by 1946 Property. The purpose of the loan was to refinance existing debt on an apartment project in northeast San Antonio.

Redman identified the $10,000,000.00 promissory note, and pointed out that the note was executed by 1946 Property on the same day as the loan agreement. In the note, 1946 Property promised to pay Stillwater National Bank. The note contained an allonge, a paragraph acknowledging the assignment of the note from Stillwater National Bank to SW Loan. The interest rate on the loan was 6% and its maturity date was April 17, 2013. Furthermore, three hundred sixty payments were due under the promissory note. Security for the loan consisted of a deed of trust, an assignment of the lessor's interest in rents and leases, and the limited guaranty agreements signed by Duarte–Viera, Pardo, and Reiss. The parties signed an amendment to the loan agreement in May 2011. Situs became the servicer of the loan in December 2011.

Redman testified about several defaults by 1946 Property. According to Redman, all of the default events listed in the "Deed of Trust and Assignment of Rents and Security Agreement" had occurred. These default events included the failure to pay any installment or portion of principal or interest within five days after the due date, the failure to fully and timely perform any obligation in the loan documents, and any default under the loan documents. As to the latter category of default events, Redman said that 1946 Property had failed to pay the taxes on the property and, therefore, the lending group had to pay protective advances to ensure that the property was not foreclosed on by the taxing authority. Redman also said there were significant building code violations on the property and additional protective advances were paid by the lending group to ensure that no one was injured.

According to Redman, the first notice of default was sent to 1946 Property on June 5, 2012. The first notice, which was gener-

ated by Situs, consisted of a demand for past due property taxes. 1946 Property never cured the defaults listed in the first notice. The second notice of default was not generated by Situs; it was prepared by outside counsel retained by SW Loan to enforce the loan documents.

Additionally, Redman testified that the first substitute trustee's sale was set for August 7, 2012, but the sale was postponed because 1946 Property filed for bankruptcy protection on that date. Eventually, however, the bankruptcy court signed an order allowing the foreclosure sale to take place. The foreclosure sale took place in November 2012.

Redman further testified about the amount of the deficiency on the note. The deficiency at the time of foreclosure was $3,482,872.63. Redman acknowledged that this amount was calculated as of November 17, 2015, which was eleven days after the foreclosure sale. This amount included accrued interest as well as credits for prepayment amounts, money in suspense, and money in the escrow account.

On cross-examination, Redman acknowledged that he was not involved in the transaction between 1946 Property and Stillwater National Bank, and he was not present when the promissory note or the guaranty agreements were signed. Redman further admitted that Situs did not maintain the documents for Stillwater National Bank. Redman stated that SW Loan had purchased this loan from Stillwater National Bank as part of a pool of loans, some of which were distressed. Furthermore, SW Loan had purchased this loan with the intent to foreclose on the property. SW Loan's position was that the loan was in default at the time it was purchased from Stillwater National Bank. Although initially unable to provide a firm date of default, Redman eventually said the date

of default was June 5, 2012, which was the date of SW Loan's first notice of default.

The second witness, Antonio P. Pardo, identified the loan agreement and the $10,000,000.00 promissory note. Pardo admitted that he had signed both the loan agreement and the note in his capacity as manager of 1946 Property. Pardo testified that his business partner, Duarte–Viera, had signed the promissory note as well. Pardo identified one of the guaranty agreements and said he remembered signing it. Pardo also said he was familiar with the "Deed of Trust, Assignment of Rents, and Security Agreement," and stated he had signed the document in his capacity as manager of 1946 Property. Pardo identified a document titled, "Substitute Trustee's Deed and Bill of Sale," and confirmed that he had received a copy of it.

Later, when Pardo was called to testify for the defense, he focused on the missed tax payments. According to Pardo, after the amended loan agreement was signed, Stillwater National Bank realized that the escrow amounts in the amended loan agreement would be insufficient to pay the taxes, so it wanted to increase the escrow payment amounts. After negotiations, the parties determined that a better solution would be for 1946 Property to continue to make escrow payments in the amount of $20,000.00 per month, but to take advantage of the split-payment option offered by the tax authority. Under this option, half of the taxes would be due on December 1 and the remaining half would be due on June 30. Pardo testified that the reason the taxes were not paid was because Stillwater National Bank forgot to make the December 1, 2011, tax payment as agreed by the parties.

### The Documents

Although both Redman and Pardo identified the promissory note during their tes-

timony, the note itself was not admitted into evidence. The loan agreement, the amendment to the loan agreement, the limited guaranty agreements, the deed of trust, both default notices, and the substitute trustee's deed and bill of sale were admitted into evidence. Additionally, 1946 Property's bankruptcy petition and other documents filed in the bankruptcy proceeding were admitted into evidence.

The loan agreement provided in pertinent part:

2. **BORROWER'S NOTE** The Loan Commitment shall be evidenced by a Promissory Note of even date herewith in the principal face amount of TEN MILLION DOLLARS ($10,000,000.00) (the "Note"), which Note shall be in form and substance and payable on the terms approved by Lender[.] Interest on the Note will be payable at the fixed interest rate equal to six percent ($6.0%) per annum (the "Interest Rate")[.] Monthly installments of principal and interest will be payable on the Note based on a three hundred sixty (360) month amortization at the Interest Rate in accordance with the terms of the Note[.] The entire unpaid principal balance plus all accrued interest owing on the Note shall be due and payable on the Maturity Date[.] All interest hereon shall be calculated for the actual number of days elapsed at a per diem charge based on a year consisting of 360 days[.]

. . . .

9. **DEFAULT** Each of the following shall constitute a default hereunder and under each of the Loan Documents ("Default")

9.1 *Nonpayment of Note* Failure to make payment of any interest on or principal of the Note or any renewals or modifications thereof within five (5) days after the due date thereof, or

9.2 *Other Nonpayment* Failure to make payment of any other amount payable under the terms of this Loan Agreement or any of the Loan Documents within five (5) days of the due date thereof, or . . . .

9.9 *Bankruptcy* The institution of bankruptcy, reorganization, liquidation of receivership proceedings by or against the Borrower or any of the Guarantors, or the making of any assignment for the benefit of creditors by or against the Borrower or any of the Guarantors, or if the Borrower or any of the Guarantors becomes insolvent, or any admission by the Borrower or any of the Guarantors of its or their inability to pay its or their debts as such debts mature, or . . . .

The first notice of default, dated June 5, 2012, advised 1946 Property that it was currently in default because (1) its monthly escrow payment for taxes had not been included with its monthly principal and interest payments, and (2) taxes were due to be paid to the county on May 12, 2012, but had not been paid due to an escrow shortage. The notice instructed 1946 Property that it could cure the default by (1) paying the remaining escrow balance for taxes plus any further penalties, and (2) paying back escrow payments and keeping escrow payments current by including them with its monthly principal and interest payments. The notice advised 1946 Property that the cure period for this default expired on July 5, 2012.

The second notice of default, dated July 3, 2012, explained the default as follows:

The nature of the Default by Borrower includes, without limitation, Borrower's failure to timely and fully pay (a) the monthly installments of principal and interest due on May 17, 2012 and June 17, 2012 in the amount of Sixty Thousand Five Hundred Eight and 72/100 Dollars

($60,508.72) each (i.e., a total of One Hundred Twenty One Thousand Seventeen and 44/100 Dollars ($121,017.44)); and (b) seven (7) installments of Twenty Thousand and No/1000 ($20,000.00) each (i.e., a total of One Hundred Forty Thousand and No/100 Dollars ($140,-000.00)) into the Reserve for Impositions (the "Impositions Reserve") required under Section 5[.]3 of the Deed of Trust and Section 7[.]20 of the Loan Agreement, which also resulted in a violation of the covenant set forth in Section 7[.]7 of the Loan Agreement. As a result of such Default, the Impositions due and payable to Bexar County, Texas with respect to the Mortgaged Property are delinquent and accruing penalties.

This notice also states that the lender is "accelerating the obligations under the Note," and informs 1946 Property that it is "required to pay Lender immediately the outstanding principal in the amount of Nine Million Four Hundred Sixty Eight Thousand Forty Three and 19/100 Dollars ($9,468,043.19)." The unpaid amounts plus the outstanding principal were to be paid to the lender on or before 5:00 p.m. on July 10, 2012.

Documents subsequently filed in the bankruptcy proceeding showed that 1946 Property listed SW Loan as a creditor holding a secured claim in the amount of $10,202,760.61. These documents further showed this claim was incurred on April 17, 2008, the date of the loan agreement and promissory note. In addition, an order signed by the bankruptcy court in October 2012, authorized the foreclosure sale of the mortgaged property.

Finally, the substitute trustee's deed and bill of sale expressly referenced the promissory note and recited that the substitute trustee was asked to sell the borrower's property "on account of one or more defaults in the obligations secured by the Deed of Trust." This deed further recited that the foreclosure sale had occurred.

### Analysis

Here, the jury was asked, "Did 1946 Property, LLC, fail to comply with the Promissory Note?" The jury answered, "No."

Under the legal sufficiency standard of review, we first examine the record for evidence that a reasonable factfinder would credit as supporting this finding. See City of Keller, 168 S.W.3d at 827; Dow Chem., 46 S.W.3d at 241. At trial, SW Loan presented evidence of multiple defaults by 1946 Property, including its failure to make principal and interest payments under the loan documents, its failure to make escrow payments, its failure to tender payment after the promissory note was accelerated, and ultimately, its filing for bankruptcy. No evidence was presented that 1946 Property made all of its monthly payments of principal and interest, made all of its escrow payments, or tendered payment when the note was accelerated. Nor was there any evidence disputing 1946 Property's bankruptcy filing. Thus, we conclude there is no evidence that a reasonable factfinder could credit to support a finding that the borrower, 1946 Property, complied with its obligations under the promissory note.

Next, under the legal sufficiency standard of review, we must examine the entire record to see if the contrary proposition, i.e., that 1946 Property failed to comply with the promissory note, was conclusively established. See Dow Chem., 46 S.W.3d at 241. In this case, Redman identified the promissory note during his testimony and testified about its contents. Pardo also identified the promissory note during his testimony. Additionally, many of the documents admitted into evidence, including the loan agreement, the deed of

trust, and substitute trustee's deed, expressly referred to the note and its contents. Under these circumstances, the jury was not free to ignore the existence of the promissory note. *Cf. Rockwall Commons Assoc., Ltd. v. MRC Mort. Grantor Trust I*, 331 S.W.3d 500, 505 (Tex.App.–El Paso 2010, no pet.) (providing that a plaintiff who sues to recover on a promissory note need only establish the note in question, that the defendant signed it, that the plaintiff was the legal holder thereof, and that a certain balance is due and owing on the note); *Resolution Trust Corp. v. Thurlow*, 820 S.W.2d 51, 53 (Tex.App.–San Antonio 1991, no writ) (reversing trial court's motion for directed verdict, and holding that deemed admissions clearly demonstrated all of the essential elements required for the plaintiffs to recover under promissory notes). We conclude the evidence established the existence of the promissory note as a matter of law.

With regard to whether 1946 Property defaulted on its obligations, the evidence showed that 1946 Property failed to pay monthly installments of principal and interest due on May 17, 2012, and June 17, 2012, in the amount of $60,508.72 each, the note was accelerated, and 1964 Property failed to pay on the promissory note. The evidence also showed that 1946 Property filed for bankruptcy and its property was foreclosed upon and sold. All of this evidence was undisputed. "[A]n appellate court conducting a sufficiency review cannot disregard undisputed evidence that allows of only one logical inference." *City of Keller*, 168 S.W.3d at 814 (internal quotations omitted). "By definition, such evidence can be viewed in only one light, and reasonable jurors can reach only one conclusion from it." *Id.* "Jurors are not free to reach a verdict contrary to such evidence." *Id.*

Additionally, the substitute trustee's deed and bill of sale recited that the substitute trustee was asked to sell the borrower's property "on account of one or more defaults in the obligations secured by the Deed of Trust." This deed further recited that the foreclosure sale occurred. Recitals in a deed are presumed correct, unless rebutted by competent evidence. *Choice Personnel No. Four, Inc. v. 1715 Johanna Square Ltd.*, No. 01–05–00830–CV, 2007 WL 1153046, at * 6 (Tex.App.–Houston [1st Dist.] 2007, pet. denied) (holding recitals in a deed that were not rebutted by competent evidence were sufficient evidence of ownership of the note and borrower's default); *Choice Personnel No. Four, Inc. v. Richardson*, No. 14–05–00675–CV, 2006 WL 2074681, at *5 (Tex.App.–Houston [14th Dist.] 2006, pet. denied) (concluding unrebutted recitals in substitute trustee's deed were evidence of the validity of a foreclosure sale). The deed recitals in this case were unrebutted. We conclude the evidence established that 1946 Property failed to comply with the promissory note as a matter of law.

Duarte–Viera, Pardo, and Reiss nevertheless argue that the evidence is legally sufficient to support the jury's finding. We now address their arguments. Duarte–Viera, Pardo, and Reiss first assert the evidence is legally sufficient because documents important to SW Loan's burden of proof—the promissory note, the notice of assignment, and SW Loan's damages calculations—were not admitted into evidence. We reject this argument. First, as previously discussed, there was ample other evidence conclusively establishing the existence of the promissory note and the borrower's failure to comply with its obligations under the note. Second, the notice of assignment and the damages calculations may have been relevant to other issues submitted to the jury; how-

ever, they had no bearing on the finding here under review.

Next, Duarte–Viera, Pardo, and Reiss argue the evidence is legally sufficient because a reasonable jury could have found there was no default. In support of this argument, Duarte–Viera, Pardo, and Reiss focus on Pardo's testimony that the original lender, Stillwater National Bank, had failed to pay the taxes under the split-payment option in accordance with the parties' agreement. We are not persuaded by this argument. Even apart from any tax related default, the undisputed evidence established that 1946 Property defaulted by failing to make its principal and interest payments, by failing to make escrow payments, and by filing for bankruptcy.

Finally, Duarte–Viera, Pardo, and Reiss argue the evidence is legally sufficient to support the jury's finding because Redman had no personal knowledge of the underlying transaction and could not verify the amount allegedly owed on the promissory note. Again, we are not persuaded by this argument. Even if the jury discounted Redman's testimony, it was still not free to disregard all of the other documentary evidence before it which conclusively established the existence of the promissory note and the borrower's defaults.

After considering all of the evidence, we conclude the evidence established that 1946 Property failed to comply with the promissory note as a matter of law. We, therefore, hold the evidence is legally insufficient to support the jury's finding on this issue. Having determined the evidence is legally insufficient to support the jury's finding, we need not address SW Loan's factual insufficiency argument.

## ATTORNEY FEES

In its second issue, SW Loan argues the trial court abused its discretion in awarding attorney fees to Duarte–Viera, Pardo, and Reiss based on their declaratory judgment counterclaim. According to SW Loan, Duarte–Viera, Pardo, and Reiss's declaratory judgment counterclaim was simply an attempt to obtain attorney fees to which they were not otherwise entitled. In response, Duarte–Viera, Pardo, and Reiss argue that their declaratory judgment counterclaim was properly raised because it presented issues beyond those presented by SW Loan, and therefore, fell within the exception to the general rule.

The Declaratory Judgments Act is not available to settle disputes already pending before a court. *BHP Petroleum Co., Inc. v. Millard,* 800 S.W.2d 838, 841 (Tex.1990). Therefore, a declaratory judgment counterclaim is not properly brought when the issue raised is already a part of the plaintiff's case. *See id.* An exception to this rule exists when a defensive declaratory judgment presents issues beyond those raised by the plaintiff, or when it has greater ramifications than the original suit. *Id.* at 841–42; *Winslow v. Acker,* 781 S.W.2d 322, 328 (Tex.App.–San Antonio 1989, writ denied). "[I]t is an abuse of discretion to award attorney's fees under the Uniform Declaratory Judgments Act if the claim for declaratory relief is urged solely as a vehicle to obtain attorney's fees." *Durham Transp. Co., Inc. v. Beettner,* 201 S.W.3d 859, 873 (Tex.App.–Waco 2006, pet. denied).

Here, SW Loan sued Duarte–Viera, Pardo, and Reiss for breach of the guaranty agreements and sought to recover damages under these agreements. By their counterclaim, Duarte–Viera, Pardo, and Reiss sought a declaration that SW Loan was not entitled to seek or recover any damages under the guaranty agreements,

other than principal and interest.[2] The trial court declared that the guaranty agreements in this case "guaranteed principal and interest only up to $2,500,000.00." In essence, the trial court determined the nature and extent of SW Loan's recovery under the guaranty agreements. The declaratory judgment counterclaim brought by Duarte–Viera, Pardo, and Reiss did not raise any issues beyond those raised by SW Loan, nor did it have any ramifications greater than the original suit. To the contrary, the declaratory judgment relief granted by the trial court was embodied in SW Loan's claims.

We conclude the trial court abused its discretion in awarding Duarte–Viera, Pardo, and Reiss attorney fees on their declaratory judgment counterclaim. *See Beettner*, 201 S.W.3d at 873 (holding the trial court abused its discretion in awarding attorney fees when the declaratory judgment claim could have been raised under prior pleadings without the necessity of a separate claim for declaratory relief).

### CONCLUSION

Typically, when we sustain a legal sufficiency challenge following a trial on the merits, we reverse and render the judgment that the trial court should have rendered. *Guevara v. Ferrer*, 247 S.W.3d 662, 670 (Tex.2007); TEX. R. APP. P. 43.3. However, we are permitted to remand to the trial court when necessary. TEX. R. APP. P. 43.3(a). In this case, the jury did not reach most of the questions concerning SW Loan's claims. We conclude it is necessary for us to remand this case to the trial court for another trial on SW Loan's claims. *See id.*

We reverse the portion of the trial court's judgment providing that SW Loan

take nothing on its claims for breach of the guaranty agreements, and remand this case to the trial court for another trial on SW Loan's claims. We also reverse the portion of the judgment awarding attorney fees to Duarte–Viera, Pardo, and Reiss, and render judgment that they take nothing on their claims for attorney fees.

---

**2.** Additionally, Duarte–Viera, Pardo, and Reiss's pleadings raised the same issue as a defense.