**Reverse and Remand and Opinion Filed April 7, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-00070-CV

**ENCORE INTERNATIONAL INVESTMENT FUNDS, LLC, Appellant**
**V.**
**2608 INWOOD, LTD., Appellee**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-13285**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Evans
Opinion by Justice Reichek

Encore International Investment Funds, LLC appeals the trial court's summary judgment orders granting a declaratory judgment in favor of 2608 Inwood, Ltd. and dismissing Encore's claims for conversion and theft liability. Encore brings three issues generally contending the trial court erred in concluding the lease agreement between the parties unambiguously granted Inwood the right to possession of a generator installed on the property during the lease term. Because we conclude the summary judgment evidence properly before the trial court did not

establish Inwood's right to possession of the generator as a matter of law, we reverse the trial court's judgment and remand the cause for further proceedings.

## Factual Background

In December 2011, Encore and Inwood entered into an agreement under which Encore leased premises in an office building owned by Inwood. At issue in this case is a provision in the lease regarding "Surrender of Premises." The provision stated in relevant part,

> At the expiration or termination of this Lease, Tenant shall deliver to Landlord the Premises with all improvements located therein in good repair and condition . . . . Provided that Tenant has performed all of its obligations hereunder, Tenant may remove all unattached trade fixtures, furniture, and personal property placed in the Premises or elsewhere in the Building by Tenant (but Tenant may not remove any such item which was paid for, in whole or in part, by Landord or any wiring or cabling unless Landlord requires such removal). Additionally, at Landlord's option, Tenant shall remove such alterations, additions, improvements, trade fixtures, personal property, equipment, wiring, conduits, cabling, and furniture (including Tenant's Off-Premises Equipment) as Landlord may request.

According to Encore's pleadings, after the lease commenced, Encore requested and was given permission by Inwood to install a generator in the parking lot of the property. Encore then connected the generator to the leased premises. At the conclusion of the lease, Inwood refused to allow Encore to remove the generator relying on the Surrender of Premises provision in the lease.

Encore brought this suit alleging claims for conversion and violations of the Texas Theft Liability Act ("TTLA"). Inwood responded with a general denial, a

–2–

variety of affirmative defenses, and a counterclaim seeking a declaratory judgment as to the rights and status of the parties under the lease. Inwood sought a declaration that the lease was a valid contract, the generator was Inwood's property, and Encore would be in breach of the lease if it removed the generator without Inwood's approval.

Inwood filed a traditional motion for partial summary judgment on its request for a declaratory judgment arguing the lease was unambiguous and, under the plain meaning of its terms, the generator could not be removed without Inwood's permission. According to Inwood, Encore's own pleadings showed the generator at issue was placed in the parking lot outside the building and then connected to the leased premises. Inwood contended that application of the clear contract language dictated Encore could not remove the generator without Inwood's permission because it was not an "unattached trade fixture . . . placed in the Premises or elsewhere in the Building." In addition to the declaration, Inwood requested an award of attorney's fees pursuant to section 37.009 of the Texas Declaratory Judgment Act ("TDJA").

Encore responded that the Lease did not expressly give ownership of the generator to Inwood and, therefore, Texas common law dictated that Encore had the right of possession. In the alternative, Encore argued the lease was ambiguous with respect to ownership and Inwood's declaratory judgment claim should be denied on that basis. Finally, Encore argued the trial court should deny Inwood's request for a

declaratory judgment because it merely restated Inwood's defenses to Encore's claims and did not constitute a proper, separate action. Encore also moved for partial summary judgment on Inwood's declaratory judgment claim making the same arguments asserted in its response to Inwood's motion.

On May 16, 2018, the trial court conducted a hearing on the cross-motions for summary judgment. During the hearing, the court asked the parties to submit additional briefing on the issue of whether the generator was an "unattached trade fixture."[1] Both parties submitted their additional briefing on June 6.

In its supplemental brief, Inwood contended the court should employ the plain meaning of the term "attached" which was commonly understood to mean "connected or joined to something." Inwood further argued the court should take judicial notice of the general characteristics of a generator which, as a practical matter, must be connected to the premises to be useful. In addition, Inwood argued that Encore had judicially admitted attachment in its petition when it stated the generator was "connected" to the premises. Inwood went on to state that "Encore does not dispute the fact that the Generator is (1) bolted to a slab of concrete (2) that the concrete was poured over two pre-existing parking lot spaces and (3) that the Generator was connected to wiring underneath the concrete that in turn is connected to wiring in the building." Inwood noted that it referenced these alleged facts in both

---

[1] Although the appellate record does not contain a reporter's record from the hearing, later filings by the parties refer to the trial court's request for additional briefing.

its motion for partial summary judgment and its response to Encore's motion for partial summary judgment. In a footnote, Inwood informed the court that it had proposed filing a joint stipulation regarding the location and description of the generator, but no agreement with opposing counsel had yet been reached.

In Encore's additional briefing, it contended there was no evidence in the summary judgment record showing whether the generator was attached or unattached and this alone meant Inwood's motion for summary judgment should be denied. Encore further argued that, even if the trial court considered the generator to be "attached" to the property, nothing in the lease prohibited Encore from removing it.

One week later, Inwood filed a motion for leave to file the declaration of Steven M. Davis, the person responsible for the day-to-day operations of the office building in which Encore had been a tenant. In the motion, Inwood stated that, during the May 16 summary judgment hearing, Encore "argued for the first time that it was contesting whether the generator at issue in this proceeding was 'attached' to Inwood's property." Inwood further stated that, prior to this assertion, Inwood had relied on Encore's judicial admission in its pleading that it placed the generator on the property and *connected it* to the leased premises. Although Inwood believed Encore's judicial admission, along with the judicial notice requested in its motion, was sufficient evidence of attachment, it requested leave to file Davis's declaration "if the Court determines that more evidence is needed to determine the status of the

Generator." In the declaration, Davis testified to the facts previously alleged in Inwood's motion and response, i.e. that the generator was bolted to a slab of concrete in the building's parking lot and connected to the building through an electrical conduit installed in a trench cut into the parking lot for that purpose. On July 25, Inwood submitted two proposed orders to the trial court; one granting it leave to file Davis's declaration and the other granting its motion for summary judgment.

On August 28, 2018, the trial court signed an order stating it had reviewed the record, pleadings, Inwood's motion, Encore's response, the exhibits, supplemental briefing, and "all evidence properly before it," and granted Inwood's motion for summary judgment in part. The court rendered a declaration that (1) the lease was a valid and enforceable contract, (2) the generator was an attached trade fixture, and (3) Encore could remove the generator only with Inwood's permission. The court stated it would separately consider Inwood's request for attorney's fees. That same day, the court signed a separate order denying Encore's motion for summary judgment. The record contains no signed order on Inwood's motion for leave to file Davis's declaration and the docket sheet does not indicate that such an order was rendered.

Shortly after the trial court's order, Inwood filed a new motion for summary judgment seeking dismissal of Encore's claims for conversion and theft liability. Inwood argued that, based on the trial court's findings with respect to the parties' rights and obligations under the lease, Encore could not succeed on its causes of

action. Inwood once again requested attorney's fees and asserted its entitlement to fees under the TTLA as an additional basis for the award.

In its response, Encore agreed its claims for conversion and theft liability were mooted by the trial court's ruling that it had no right to possession of the generator without Inwood's permission. Encore disputed, however, Inwood's entitlement to attorney's fees.

In a series of orders rendered over the next several months, the trial court dismissed Encore's claims against Inwood, determined Inwood was entitled to an award of attorney's fees under both the TDJA and the TTLA, and awarded Inwood $75,000 in fees through trial plus $15,000 in appellate attorney's fees. These orders were subsumed into a final judgment. Encore brought this appeal.

## Analysis

Encore asserts three issues contending (1) the lease did not expressly grant ownership of the generator to Inwood, (2) alternatively, the lease is ambiguous with respect to ownership, and (3) Inwood's counterclaim for a declaratory judgment was improper. We begin by addressing Inwood's challenge to the propriety of the declaratory relief granted by the trial court.

### I. Declaratory Judgment Counterclaim

Generally, the TDJA is not available to settle disputes already pending before the court. *BHP Petroleum Co. Inc. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990). This is because a declaration of non-liability for past conduct is not normally

a function of the Act. *Id.* Where the harm sued upon is a one-time occurrence that is fully covered by the plaintiff's original suit, a counterclaim for declaratory judgment is improper. *See id.* Declaratory relief may not be urged solely as a vehicle to obtain attorney's fees and defendants cannot create a right to fees merely by restating their defenses in the form of a declaratory judgment action. *See id.*; *see also SW Loan A, L.P. v. Duarte-Viera*, 487 S.W.3d 697, 707 (Tex. App.—San Antonio 2016, no pet.).

In this case, Inwood's counterclaim sought a declaration regarding the rights of the parties with respect to the generator pursuant to the terms of the lease. Encore argues the counterclaim falls within the general prohibition on using the Act to resolve a claim already before the court. Even if the trial court improperly permitted the declaratory judgment action, however, we conclude any such error was harmless. Incorrect conclusions of law do not require reversal if the controlling findings will support a correct legal theory. *Vinson v. Brown*, 80 S.W.3d 221, 230 (Tex. App.—Austin 2002, no pet.).

The declarations by the trial court – that the lease was a valid contract pursuant to which the generator was an "attached trade fixture" that could be removed only with Inwood's permission – were the findings necessary to resolve Encore's claims for conversion and theft liability. The declarations, therefore, added nothing to what would be implicit in a final judgment on the defenses raised by Inwood. *See Landing Cmty. Improvement Ass'n, Inc. v. Young*, No. 01-15-00816-CV, 2018 WL 2305540,

–8–

at *23 (Tex. App.—Houston [1st Dist.] May 22, 2018, pet. denied). Although Inwood requested an award of attorney's fees under the TDJA, it also requested, and was awarded, fees under the theft liability act. Encore does not challenge on appeal the propriety of the fees awarded under the TTLA. Because Inwood did not receive any additional relief by virtue of having asserted a claim for declaratory judgment than it would have obtained if the trial court had simply granted it summary judgment based on its contractual defenses to Encore's claims, we conclude any error by the trial court in allowing the declaratory judgment action was harmless. We resolve Encore's third issue against it.

## II. Construction of the Lease

In its first and second issues, Encore contends the trial court erred in concluding the lease unambiguously granted Inwood the right to possession of the generator at the end of the lease term. In construing a contract, we must ascertain and give effect to the parties' intentions as expressed in the document. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005). We consider the entire writing and attempt to harmonize and give effect to all the provisions by analyzing them with reference to the agreement as a whole. *Id.* at 312. Whether an agreement is ambiguous is a question of law for the court to decide. *Las Colinas Obstetrics-Gynecology-Infertility Ass'n, P.A. v. Villalba*, 324 S.W.3d 634, 639 (Tex. App.—Dallas 2010, no pet.). An ambiguity does not arise simply because the parties advance conflicting interpretations. *Id.* If the agreement can be given a certain or

–9–

definite legal meaning or interpretation, it is not ambiguous, and we will construe it as a matter of law. *Id*. Intent is taken from the agreement itself, not the parties' present interpretation, and the agreement must be enforced as written. *Id*.

The Surrender of Premises provision in the lease directly addresses what property Encore may remove at the end of the lease term. The agreement specifies that Encore may remove "unattached trade fixtures, furniture, and personal property."[2] Encore may not, however, remove wiring or cabling associated with such items unless required by Inwood to do so. Furthermore, an unattached trade fixture, piece of furniture, or item of personal property may not be removed if it was paid for, in whole or in part, by Inwood. All other property may be removed only at Inwood's option and request.

Encore contends that, even if the generator does not fall under the category of items it "may remove" at the end of the lease, the lease does not expressly grant the right to possession of any property to Inwood. Encore argues that nothing in the lease addresses "ownership" and notes that the lease does not use terms like "only" or "shall remain." Based on the absence of this language, Encore contends the lease should be read to allow Inwood to force removal of an item, but not to restrict

---

[2] Under the terms of the lease, these items of property must also be located in the leased premises or elsewhere in the building. However, the trial court did not grant summary judgment based on the location of the generator and the parties do not address the impact of this contractual limitation in their briefs on appeal.

–10–

Encore's ability to remove whatever property it chooses. Encore's argument is not well taken.

The intent of the parties regarding the right to remove additions made to the leasehold during the term of the tenancy is determined from the provisions of the lease agreement. *Jim Walter Window Components v. Tpk. Distrib. Ctr.*, 642 S.W.2d 3, 4 (Tex. App.—Dallas 1982, writ ref'd n.r.e.). When the lease specifically addresses fixtures, the lease agreement governs the parties' property rights in the fixtures. *Cremers v. Hallman*, 403 S.W.3d 878, 884 (Tex. App.—Texarkana 2013, pet. denied).

As stated above, the lease lists three types of property that Encore may remove at the end of the lease term – unattached trade fixtures, furniture, and personal property. The interpretive canon of *expressio unius est exclusio alterius* – the express mention of one thing excludes another – applies here. *See Chen v. RB & RB Invs., Inc.*, No. 14-02-00178-CV, 2003 WL 297674, at *1 (Tex. App.—Houston [14th Dist.] Feb. 13, 2003, no pet.) (mem. op., not designated for publication) (lease mentioning only structural components necessarily excluded wiring). There is no reason to list the types of property Encore may remove other than to prohibit it from removing anything else. Encore's interpretation of the lease would render this sentence of the Surrender of Premises provision meaningless. *See Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 7 (Tex. 2014) (in construing contract, we endeavor to give effect to all provisions so none are rendered meaningless).

–11–

Accordingly, we conclude the lease unambiguously limits Encore's right to remove property at the end of the lease term to only the three types of property specifically listed unless removal is requested by Inwood.

Encore next argues that, based on the law applicable to trade fixtures, the generator must be considered an "unattached trade fixture" that may be removed. Encore relies on the common law definition of "trade fixtures" which is items "that a tenant annexes to the realty to enable the tenant to carry on its business" and that "can be removed without material or permanent injury to the freehold." *Reames v. Hawthorne-Seving, Inc.*, 949 S.W.2d 758, 761 (Tex. App.—Dallas 1997, pet. denied). Encore goes on to assert, without citation to evidence, that the generator fits within this definition because it can be "easily removed without injury to [Inwood's] property."

By focusing on the definition of "trade fixtures," Encore would have us ignore the term "unattached," which we are not at liberty to do. *See Tempo Tamers, Inc. v. Crow-Houston Four, Ltd.*, 715 S.W.2d 658, 665 (Tex. App.—Dallas 1986, writ ref's n.r.e.). Indeed, as this court has noted before, the term "unattached trade fixture" is something of an oxymoron since fixtures are, by definition, attached. *Id.* The parties cannot, therefore, have intended for the common law definition to apply. *Id.*

Encore does not argue that the term "unattached trade fixtures" is ambiguous. But the term cannot, as Encore suggests, encompass all trade fixtures. *Id.* The lease itself distinguishes between "unattached trade fixtures," which may be removed, and

–12–

"trade fixtures," which may be removed only with Inwood's permission. Encore's reliance on the law generally applicable to trade fixtures, therefore, is misplaced.

In the alternative, Encore contends the trial court erred in granting summary judgment in favor of Inwood because Inwood failed to provide any evidence showing that the generator was an "unattached trade fixture" as a matter of law. On this point, we agree with Encore. A movant for traditional summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *McCoy v. Texas Instruments, Inc.*, 183 S.W.3d 548, 553 (Tex. App.—Dallas 2006, no pet.). We consider the summary judgment evidence in the light most favorable to the non-movant. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

The only evidence Inwood submitted with its motion for summary judgment was copies of Encore's original petition and the lease. Inwood argues the statement in Encore's petition that the generator was "connected" to the leased premises constituted a judicial admission that the generator was "attached." But the language of the lease presupposes that an "unattached trade fixture" may be "connected" to the leased premises through wiring or cabling. The prohibition on removing wiring or cabling in the parenthetical following the list of types of removable property can only refer to wiring and cabling associated with those types of property. Otherwise the prohibition would be redundant of the prohibition on removing wiring and

cabling found in the following sentence and rendered meaningless. Because, under the terms of the lease, an "unattached trade fixture" may have wiring or cabling connecting it to the leased premises, Encore's admission that the generator was "connected" to the leased premises does not prove the generator was an "attached" trade fixture as a matter of law.

Similarly, Inwood cannot rely on its request to the trial court to take judicial notice of the "general characteristics" of a generator. Generators come in myriad shapes, sizes, and functionalities, and we cannot conclude that attachment is such an inherent part of the nature and use of the device that the trial court could properly take judicial notice of this fact. To the extent Inwood argues the generator must necessarily be connected to the property to which it supplies power, as discussed above, the lease presupposes that an unattached trade fixture may be connected to the leased premises through wires or cables. Accordingly, judicial notice of such a connection would not prove attachment.

Encore points to the aspects of the generator and its installation that were discussed in Davis's declaration to show attachment as a matter of law. This declaration was submitted to the trial court one month after the summary judgment hearing and one week after the parties submitted their additional briefing on the issue of attachment. Although Inwood filed a motion for leave to file the untimely declaration, and later submitted a proposed order to the trial court, no order appears in the record granting Inwood the leave it requested.

Where nothing appears in the record to indicate a late filing was done with leave of court, it is presumed the trial court did not consider it. *B.C. v. Steak N Shake Operations, Inc.*, No. 17-1008, 2020 WL 1482586, at \*2 (Tex. March 27, 2020). We examine the record for an affirmative indication that the late filing was "accepted and considered." *Id.* That indication may arise from a "separate order, a recital in the summary judgment, or an oral ruling contained in the reporter's record of the summary judgment hearing." *Id.*

In this case, there is no separate order and no oral ruling on the motion for leave. In *B.C. v. Steak N Shake Operations, Inc.*, the supreme court recently concluded that a recital in the trial court's summary judgment order that it considered the "evidence," without any limitation, was an affirmative indication that the trial court considered untimely filed summary judgment evidence. *Id.* at \*3. Unlike the order at issue in *B.C.*, however, the summary judgment order before us contains an explicit limitation on the evidence considered by the trial court. Here, the trial court's order states it considered only the evidence "properly before it." Given this limiting language, and the fact that there is no signed order or other indication the trial court granted Inwood leave to file Davis's declaration, we must presume the trial court did not consider this evidence. Because there was no evidence properly before the trial court showing the generator was an attached trade fixture as a matter of law, we conclude the trial court erred in granting Inwood summary judgment on that basis.

Inwood contends that, even if this Court concludes it failed to show the generator was an attached trade fixture, we should affirm the trial court's judgment because the generator was an "improvement" that must be surrendered at the expiration of the lease. This argument fails for three reasons. First, Inwood did not raise this in its motion for summary judgment and a summary judgment cannot be affirmed on grounds not expressly set out in the motion or response. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993). Second, the trial court granted summary judgment on the basis that the generator was an "attached trade fixture" and we limit our consideration to the specific grounds upon which the summary judgment was granted. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

Finally, for the same reason there was no evidence properly before the trial court showing the generator was an attached trade fixture, there was no evidence to show the generator was an improvement. Improvements are items of personalty that have become permanent parts of the realty to which they are affixed. *C.W. 100 Henna, Ltd. V. El Chico Restaurants of Tx., L.P.*, 295 S.W.3d 748, 755 (Tex. App.— Austin 2009, no pet.). Evidence that the generator was "connected" to the leased premises does not show it has become a permanent part of the realty.

Based on the foregoing, we conclude the trial court erred in granting summary judgment in favor of Inwood. We reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

190070F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

ENCORE INTERNATIONAL
INVESTMENT FUNDS, LLC,
Appellant

No. 05-19-00070-CV          V.

2608 INWOOD, LTD., Appellee

On Appeal from the 162nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-17-13285.
Opinion delivered by Justice
Reichek. Justices Molberg and Evans
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.


Judgment entered April 7, 2020