

# Fourth Court of Appeals

### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00550-CV

Sergio **ALANIS** Sr.,
Appellant

v.

Jesus Maria "Chuy" **ALVAREZ** and
Alvarez and Alvarez & Associates,
Appellees

From the 381st Judicial District Court, Starr County, Texas
Trial Court No. DC-00-328
Honorable Federico Hinojosa, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:     Sandee Bryan Marion, Chief Justice
             Patricia O. Alvarez, Justice
             Liza A. Rodriguez, Justice

Delivered and Filed: October 28, 2020

AFFIRMED

Sergio Alanis Sr. appeals from the trial court's judgment, arguing that the evidence is legally and factually insufficient to support the jury's verdict. We affirm.

### BACKGROUND

On January 27, 1998, Alanis was arrested by federal agents on charges of conspiracy and money laundering. He was represented in this federal criminal proceeding by attorney Jesus Maria "Chuy" Alvarez. While Alanis was in jail pending trial, his wife and Alvarez's assistant visited him so that he could sign some legal documents. Alanis testified that he believed he was signing a

power of attorney that would give authority to his wife over financial matters. In fact, along with a power of attorney, Alanis signed (1) an attorney-fee contract that transferred title of the property to Alvarez as partial payment of Alvarez's fee; and (2) a deed conveying the property to Alvarez. A federal jury subsequently found Alanis guilty of conspiracy and money laundering. He was sentenced to twenty years of imprisonment.

In 2000, he sued Alvarez for fraud and breach of fiduciary duty. Alanis alleged that Alvarez had wrongfully transferred title to a forty-eight-acre parcel of land, which is the property in dispute, by directing his assistant to procure his signature through deceit. The lawsuit languished while Alanis was in prison. When he was released from prison, his case against Alvarez proceeded to trial. After hearing all the evidence, the jury found that Alanis first became aware of the conveyance of the property to Alvarez in December 1999. The jury also found that Alvarez had not obtained the property by breaching any fiduciary duty owed to Alanis and that Alvarez had not obtained the property by fraud.

### A. Judgment Nunc Pro Tunc

In his first issue, Alanis argues the trial court erred by stating in its final judgment that the jury's answer to the first question of the charge was December 1998 and not December 1999. In its Nunc Pro Tunc Final Judgment, the trial court corrected this clerical error by stating that the jury answered the first question with December 1999. *See* TEX. R. CIV. P. 316; *see also Tex. Dep't of Transp. v. A.P.I. Pipe & Supply*, 397 S.W.3d 162, 167 (Tex. 2013) (explaining that the trial court may at any time correct a clerical error in the judgment by signing a judgment nunc pro tunc). Moreover, even if the trial court had not signed a judgment nunc pro tunc, the erroneous statement regarding the jury's answer to the first question in the original judgment was superfluous and did not affect the judgment rendered against Alanis. *See* TEX. R. APP. P. 44.1(a) (proving that trial court judgment may not be reversed on appeal unless the error complained of "probably caused

the rendition of an improper judgment," or "probably prevented the appellant from properly presenting the case to the court of appeals"). Therefore, we conclude Alanis's first issue is without merit.

### B. *Sufficiency of the Evidence*

In his second, third, and fourth issues, Alanis argues that the evidence was legally and factually insufficient to support jury findings on which he had the burden of proof at trial. Specifically, in his second issue, Alanis argues that there was legally and factually insufficient evidence to support the jury's finding that Alvarez did not commit fraud against Alanis. In his third issue, Alanis argues that the evidence is legally and factually insufficient to support the jury's finding that Alvarez did not breach any fiduciary duty owed to Alanis. Finally, in his fourth issue, Alanis argues the evidence is legally and factually insufficient to support the jury's finding that he was not entitled to damages.

### 1. *Standard of Review*

When a party attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the evidence establishes all vital facts in support of the issue as a matter of law. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *SW Loan A, L.P. v. Duarte-Viera*, 487 S.W.3d 697, 701 (Tex. App.—San Antonio 2016, no pet.). "In performing a legal sufficiency review, we must first examine the record for evidence that a reasonable factfinder would credit as supporting the finding while ignoring all evidence to the contrary unless a reasonable factfinder could not." *SW Loan A*, 487 S.W.3d at 701 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005), and *Dow Chem.*, 46 S.W.3d at 241). "If there is no evidence to support the finding, we then examine the entire record to determine if the contrary proposition is established as a matter of law." *Id*. (citing *Dow Chem.*, 46 S.W.3d at 241). "The point of error should be sustained only if the contrary proposition is conclusively

established." *Dow Chem.*, 46 S.W.3d at 241. "Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *City of Keller*, 168 S.W.3d at 816.

"We consider the evidence in the light most favorable to the finding under review and indulge every reasonable inference that would support it." *SW Loan A*, 487 S.W.3d at 702 (citing *City of Keller*, 168 S.W.3d at 822). "We assume that jurors decided questions of credibility or conflicting evidence in favor of the finding if they reasonably could do so." *Id*. (citing *City of Keller*, 168 S.W.3d at 819). We do not substitute our judgment for that of the factfinder if the evidence falls within this zone of reasonable disagreement. *Id*. (citing *City of Keller*, 168 S.W.3d at 822). "However, while '[p]roper legal-sufficiency review prevents reviewing courts from substituting their opinions on credibility for those of the jurors,' 'proper review also prevents jurors from substituting their opinions for undisputed truth.'" *Id*. (citing *City of Keller*, 168 S.W.3d at 816-17). "When evidence contrary to a verdict is conclusive, it cannot be disregarded." *Id*. (citing *City of Keller*, 168 S.W.3d at 816-17).

When a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, the party must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242. In conducting our factual sufficiency review, we consider and weigh all of the evidence, and will set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id*.

"A factual sufficiency challenge concedes the existence of conflicting evidence, yet maintain[s] that the evidence against the jury's findings is so great as to make the finding erroneous." *Lamont v. Vaquillas Energy Lopeno Ltd.*, 421 S.W.3d 198, 209 (Tex. App.—San Antonio 2013, pet. denied). In conducting a factual sufficiency review, we do not substitute our

judgment for that of the jury and must remain mindful that "the jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Similarly, the role of resolving inconsistencies within or conflicts among the witnesses' testimony is one for the jury, and not the reviewing court. *Lamont*, 421 S.W.3d at 209-10.

### 2. Evidence at Trial

Alanis testified at trial that he had been arrested on federal charges of conspiracy and money laundering when he hired Alvarez to represent him. According to Alanis, Alvarez represented him at a bond hearing where he was denied bail. After he was back in jail, he called Alvarez and asked him to prepare a power of attorney giving authority to his wife. When asked if he had paid Alvarez for his services prior to this date, Alanis claimed that his wife had paid Alvarez in cash. On February 5, 1998, Alanis's wife and Alvarez's legal assistant arrived at the jail for him to sign legal papers. After he signed the documents, Alvarez's assistant notarized them. At trial, Alanis admitted that it was his signature on all these documents; however, he testified his signature was procured through deceit and that he did not realize what he was actually signing.

The legal documents signed by Alanis were introduced in evidence. The first document is a "Power of Attorney" signed by Alanis on February 5, 1998, giving his wife power of attorney. The second document is an "Attorney-Client Contract of Employment for Criminal Matters," which was also signed by Alanis on February 5, 1998. It states that Alvarez would represent Alanis in his pending federal criminal case and that Alanis agreed to pay Alvarez a fee of $100,000. The contract also provided that "[s]hould the services of the Attorney [Alvarez] be terminated, no part of the fee is to be returned. The fee paid is to be deemed earned." Two paragraphs in the contract referred to the property in question:

12) Attorney acknowledges the receipt of Deed for the transfer of 48 acres located in La Sagunada Ranch. This deed is attached as Exhibit "A." Attorney and client agree that the deed is valued at $48,000.00 which w[ill] be credited to the $100,000.00 attorney's fees herein and therefore remaining at a balance of $52,000.00.

13) Client at all times represented to the attorney that the 48 acres were not purchased with drug money or in any way related to any drug trafficking.

The contract ended the client's acknowledgement:

14) CLIENT[] ACKNOWLEDGES THAT CLIENT[] HA[S] READ AND UNDERSTANDS THIS AGREEMENT AND ACKNOWLEDGES RECEIPT OF A COPY HEREOF, and that this Contract is the complete agreement of the parties and supersedes all prior contracts and understandings between the parties and may not be modified orally.

The third document entered in evidence was the warranty deed for the property, which was signed by Alanis and notarized by Alvarez's assistant, Rosabel Oliveira, on February 5, 1998.

In addition to these documents, Alvarez also testified. Alvarez estimated that eighty-five percent of the cases he handled were federal criminal cases. According to Alvarez, he met Alanis in the 1980s and handled various legal matters for him, including handling "cases for him in California." Alvarez testified, "I did not know anything about [Alanis]'s illegal business at all even though I was his lawyer. I had no clue that he was in the business of drug trafficking." Alvarez testified that when Alanis was arrested on the federal charges, he owed Alvarez for unpaid fees related to other legal matters. According to Alvarez, the federal criminal prosecution against Alanis was a complicated legal matter from the beginning:

When this case came, we knew that the case was complicated. We had an idea real quick, from day one, when we went to McAllen, that this case had a lot of issues [in] it. We knew that this case was going to be a wiretapping case. The federals [sic] have all the time in the world to indict somebody, and they are good at it. And I know from experience over the years that they're very good at it. Sergio [Alanis] knew that. I knew that. We are in Houston, Texas [for the arraignment]. By this time, we do not know who the judge is going to be, but all of the judges in Houston are pretty tough. . . . We ended up doing the arraignment. They called the arraignment, and the initial appearance was here in McAllen. I appeared and I told the family: I will not go to Houston unless I get paid. And that's when the deeds

were done. That's when the contracts were done. And that's why they were done a few days after the initial arrest of January 27th. That's how it came down. I w[ould] not have gone to represent him if I had not gotten paid. Sergio [Alanis] did not have any money to pay, to pay us at all. The only property that he had, that I knew of, was the forty-eight acres. And he told me: "This is the only thing I c[an] pay you with. I don't have anything else." And, "that's fine," I said, "I'll take that, but this is not going to cover your bill at all. I mean, I will not go to Houston without you signing a contract for $100,000. However, you can pay me later on, the $52,000, that are left, that's fine, I don't have any problem, just try to pay it." I mean, I just wanted for him to make sure of that. He agreed to that.

Alvarez testified that he directed his staff to prepare the paperwork, including the contract for legal services and the deed. According to Alvarez, the legal contract was specific as to the forty-eight acres in case federal agents ever asked him for a contract to prove he was not being paid with illegal funds. Alvarez testified his staff then visited Alanis in jail so that Alanis could sign the legal documents.

### 3. Fraud

To prevail on his fraud claim, Alanis had to prove the following at trial: (1) Alvarez "made a material representation that was false;" (2) Alvarez "knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;" (3) Alvarez intended to induce the plaintiff to act upon the representation; and (4) Alanis actually and justifiably relied upon the representation and suffered injury as a result. *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P.*, 546 S.W.3d 648, 653 (Tex. 2018). Under the fourth element, Alanis had to show both that he actually relied on Alvarez's representation and that such reliance was justifiable. *See Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). Now, on appeal, because he had the burden of proof at trial, in order to show the evidence is legally insufficient to support the jury's verdict, Alanis must demonstrate that the evidence presented at trial establishes all vital facts in support of Alvarez having committed fraud as a matter of law. *See Dow Chem.*, 46 S.W.3d at 241. In reviewing the evidence, however, we conclude the jury could have reasonably

believed Alvarez's version of events and not believed Alanis's version. *See SW Loan A*, 487 S.W.3d at 702 ("We assume that jurors decided questions of credibility or conflicting evidence in favor of the finding if they reasonably could do so."). Therefore, we hold the evidence is legally sufficient to support the jury's finding that Alvarez did not commit fraud against Alanis.

With regard to factual sufficiency, because Alanis had the burden of proof at trial, he must demonstrate on appeal that the jury's adverse finding against him is against the great weight and preponderance of the evidence. *See Dow Chem. Co.*, 46 S.W.3d at 242. However, as noted, the evidence in this case consisted of two different versions of events: one told through Alanis's testimony and one told through Alvarez's testimony. The jury was free to choose which version of events it found credible. *See SW Loan A*, 487 S.W.3d at 702. We therefore hold that the evidence is factually sufficient to support the jury's finding that Alvarez did not commit fraud against Alvarez.

### 4. Breach of Fiduciary Duty

In order to prove his breach of fiduciary duty claim, Alanis had the burden at trial to show the following: (1) a fiduciary relationship between him and Alvarez, (2) a breach by Alvarez of his fiduciary duty to Alanis, and (3) an injury to Alanis or benefit to Alvarez as a result of Alvarez's breach. *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). As Alanis's lawyer, it is undisputed that Alvarez owed Alanis a fiduciary duty. However, it was disputed at trial whether Alvarez breached the duty he owed Alanis. As explained above, the jury could reasonably have believed Alvarez's testimony and not found Alanis's testimony credible. *See SW Loan A*, 487 S.W.3d at 702. Therefore, we hold the evidence is legally and factually sufficient to support the jury's finding that Alvarez did not breach the fiduciary duty he owed Alanis.

*5. Damages*

In his fourth issue, Alanis argues the evidence is legally and factually insufficient to support the jury's decision not to award him damages. However, because Alanis has not shown he was entitled to recover on his claims, he cannot recover any damages. We therefore find the trial court did not err in failing to award him damages.

## CONCLUSION

Having determined that Alanis's issues on appeal lack merit, we affirm the judgment of the trial court.

Liza A. Rodriguez, Justice